# MAYOR AND CITY COUNCIL OF BALTIMORE

*vs.*

## CHARLES B. CLARK.

*Contracts: third parties to determine; valid.*

Contracts which leave to an engineer or other third party the determination of the *amount* and *quantity* of work done, and to be paid for, from time to time under the contract, and also the decision of every question under the contract, his estimates and decisions to be final, are valid, and, in the absence of fraud or bad faith, will be enforced.                          p. 309

*Decided April 5th, 1916.*

Appeal from the Court of Common Pleas of Baltimore. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and of the defendant that the Court directed to be published with the report of the case:

*Pltff.'s 1st Prayer.*——At the request of the plaintiff Clark the Court instructs the jury that if they find from the evidence in this case the following facts: (1) That sheathing was required for the excavation work in building the sewer referred to in the evidence; (2) That in order to do the excavation work *involved* (included) in preparing the trenches

for said sewer, it was **necessary** for said Clark to excavate a trench *outside of* beyond the (neat) lines of a trench having a width at the bottom of 109 inches for the 69-inch sewer, and a width at the bottom of 96 inches for a 60-inch sewer; (3) That the Water Engineer of the City, or his representative, measured or estimated the material so excavated on the basis of a width of trench of a less area than the trench as actually excavated; then by the true construction of the contract involved in this case the plaintiff is entitled to be paid for all such material *as was* (reasonably) necessary to be *so* excavated for which the jury may find the plaintiff Clark has not been paid or allowed by the City, at the rate per cubic yard of $1.20 for loose rock, $2.75 for solid rock, and 60c. for earth. (*Granted as modified.*)

*Pltff.'s 2nd Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that if they find from the evidence in this case that, in excavating the *earth* or loose or solid rock in constructing the trenches for the work involved in this suit, it was necessary for the plaintiff Clark to excavate the same below the grade established by the City's Water Engineer, and that the plaintiff Clark has not been paid for or allowed by the defendant, the City of Baltimore, for any material excavated below the grade established by the City's Water Engineer, then the plaintiff Clark is entitled to recover therefor to such depth as actually excavated, not exceeding six inches below the established grade (payment therefor to be made at the rate of $1.20 for loose rock, $2.75 for solid rock). (*Modified and granted.*)

*Pltff.'s 4th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that if they find from the evidence in this case that the defendant's Water Engineer Quick did by two letters, dated October 8th, 1908, and October 19th, 1908, order in writing certain additional concrete outside of the lines called for by the plans offered in evidence, said concrete to be placed where directed either by said Quick or his representatives, Sudler or Beatty, and that the

plaintiff Clark did, in consequence of said letters between the dates of October 8th, 1908, and December 12th, 1908, at places authorized by any one or any of said Quick, Sudler or Beatty, certain extra concrete work for which he has not been fully paid or allowed by the defenant, then the plaintiff is entitled to recover therefor at the rate per cubic yard of $8.00 for invert work and $9.00 for arch work, provided the jury find further that defendant's Water Engineer or his representative failed or refused to measure or estimate all of such extra concrete, *as so directed to be done, and shall further find that the same has not been paid for or allowed to the plaintiff by the defendant in the payments made to said plaintiff.* (*Granted as modified.*)

*Pltff.'s 5th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that if they find from the evidence in this case that the plaintiff Clark put certain sheathing in the trenches for the erection of the diversion sewer referred to in the evidence, and that the plaintiff Clark has not been fully paid by the defendant, the City of Baltimore, for all sheathing which the defendant engineers *saw in the trench and* in their discretion did not order to be withdrawn *therefrom,* then the plaintiff Clark is entitled to be paid for all such sheathing which the jury find was *so* left in the said trenches and was not ordered to be withdrawn by the defendant's engineers, and for which he has not been paid; if the jury so find, at the rate of $40.00 per thousand feet board measure; provided, however, the jury further find that the *said timber was left in the exercise of such discretion by the* defendant's Water Engineer or his representative, *and shall further find that the said engineer or his representative in computing* the monthly and final estimates for sheathing did nto measure the entire amount of such sheathing or did not have reasonably adequate information upon which to prepare such estimates and did not exercise reasonable diligence to secure such adequate information, and made (gross)

errors in allowing to plaintiff Clark for sheathing in such estimates. (*Granted as modified.*)

*Pltff.'s 6th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that, if they find from the evidence in this case that on or before October 11th, 1909, the defendant's Water Engineer or his representative, with full knowledge of all matters connected with the work involved in this suit, prepared and gave to the plaintiff Clark a final estimate of all work done, showing a balance of $6,008.67 due to the plaintiff, and the City's Water Board, with a full knowledge of all matters connected with the work involved in this suit, did on or about October 13th, 1909, unconditionally accept the said work, and that the said Water Board did, on or about November 27th, 1909, make a payment of $3,000.00 on account of said final estimate, then the plaintiff Clark is entitled to a verdict for the unpaid balance of said final estimate, to wit, $3,008.67. (*Granted.*)

*Pltff.'s 7th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that if they find from the evidence that the City's engineers on the work referred to in the evidence required the plaintiff to do certain extra concrete work and failed or refused to give the plaintiff orders in writing therefor, and that the plaintiff was by such failure or refusal, if the jury so find, delayed in the execution of the work required by him to be done under the contract between the parties to this case, and was thereby damaged, then the plaintiff Clark is entitled to recover therefor in this action. (*Granted.*)

*Pltff.'s 8th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that the measure of damages for any delay caused to said Clark by the defendants, or its agents in the premises (if the jury so find), is the allowance of such sum to the plaintiff as is reasonably necessary to place him in the same condition he would have been in if he had been allowed to proceed without any interference by the defendant or its agents in the premises. (*Granted.*)

*Pltff.'s 9th Prayer.*—At the request of the plaintiff Clark, the Court instructs the jury that, if they find a verdict in favor of the plaintiff Clark, *then* they *may* in (are entitled) in their discretion allow the plaintiff Clark interest upon *such amount as they may find to be due to the plaintiff at* (the same at) the rate of 6 per cent. per annum, said interest to commence from 30 days after the material and work had been *furnished* in conformity with the terms of the contract between the parties and (30 days) after the completion and acceptance of the work in writing by the City's Water Board. (*Granted as modified.*)

*Defndt.'s 1st Prayer.*—The Court instructs the jury that, under the contract offered in evidence, the Water Engineer was authorized to determine all questions in relation to the amount and quality of the several kinds of work which were to be paid for under said contract, and to determine all questions in relation to said work and the construction thereof, and decide all questions which might arise relative the execution of said contract on the part of said contractor, and that the estimate and decision of said Water Engineer, by the agreement of the parties, was made final, and that such estimate and decision of the amount and quality of the several kinds of work to be paid for under said contract is a condition precedent to the plaintiff's right to recover, and that upon the undisputed evidence in this case the said Water Engineer did, on the 11th day of October, 1909, render his decision upon every question in dispute between the parties, and did send a statement to the City Comptroller showing his decision, and that according to said decision *and the evidence* there is now due the contractor (plaintiff) the sum of $3,008.00, with or without interest thereon, in the discretion of the jury, from the time when the same was due and payable; that there is no evidence in this case legally sufficient to show that the said Water Engineer, or any engineer representing the defendant on the work mentioned in the evidence, was guilty of any fraud or bad faith in the rendering of said

decision, and, therefore, the same is binding in this case, and the verdict of the jury should be in accordance therewith. (*Refused.*)

*Defndt.'s 2nd Prayer.*—The Court instructs the jury that, under the contract offered in evidence, the Water Engineer was authorized to determine all questions in relation to the amount and quality of the several kinds of work which were to be paid for under said contract, and to determine all questions in relation to said work and the construction thereof, and decide all questions which might arise relative the execution of said contract on the part of said contractor, and that the estimate and decision of said Water Engineer, by the agreement of the parties, was made final, and that such estimate and decision of the amount and quality of the several kinds of work to be paid for under said contract is a condition precedent to the plaintiff's right to recover, and that upon the undisputed evidence in this case the said Water Engineer did, on the 11th day of October, 1909, render his decision upon every question in dispute between the parties, and did send a statement to the City Comptroller showing his decision, and that according to said decision *and the evidence* there is now due the contractor (plaintiff) the sum of $3,008.00, with or without interest thereon, in the discretion of the jury, from the time when the same was due and payable; that then the decision of said engineer is binding upon the plaintiff, and the jury should be governed thereby in finding their verdict, unless the jury find that in making such decision the said Water Engineer was guilty of fraud or bad fath. (*Refused.*)

*Defndt.'s 3rd Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant for and on account of any concrete or concrete work done by the plaintiff, as mentioned in the evidence, over and above that which has been allowed by the estimates of the Water Engineer offered in evidence. (*Refused.*)

*Defndt.'s 4th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant for and on account of any lumber left in trench or otherwise left or used in connection with the work mentioned in the evidence, over and above that which has been allowed by the estimate offered in evidence. (*Refused.*)

*Defndt.'s 5th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant for and on account of any damage accruing to the plaintiff because of any delay in connection with the work under the contract mentioned in the evidence. (*Refused.*)

*Defndt.'s 6th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to prove that the defendant caused the plaintiff to suffer any delay in the prosecution of the work mentioned in the evidence, for which the plaintiff is entitled to recover any damage. (*Refused.*)

*Defndt.'s 7th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant, for and on account of any excavation work done by the plaintiff, as mentioned in the evidence, over and above that which has been allowed by the estimates offered in advance. (*Refused.*)

*Defndt.'s 8th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant for and on account of any improper classification of any of the work done by the plaintiff as mentioned in the evidence. (*Refused.*)

*Defndt.'s 9th Prayer.*—The Court instructs the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover any verdict against the defendant for or on account of any excavation work done or concrete used,

or concrete work done below the sub-grade line of the trench mentioned in the evidence, over and above that which has been allowed by the estimates offered in evidence. (*Refused.*)

*Defndt.'s 10th Prayer.*—The Court instructs the jury that, as a matter of law the letters of October 8th, 1908, and October 19th, 1908, from Alfred M. Quick to the plaintiff, offered in evidence, constitute no legal authority to the plaintiff for the doing of work for which the plaintiff is entitled to recover anything in addition to said amounts as may have been allowed under the estimates of the Water Engineer offered in evidence. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and URNER, JJ.

*S. S. Field, City Solicitor,* and *Robert F. Leach, Jr., Assistant City Solicitor,* for the appellant.

*James M. Mullen* and *Raymond S. Williams,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In June, 1908, the appellee entered into a contract with the Mayor and City Council of Baltimore to construct a diversion sewer, according to certain plans and specifications made a part thereof, and to furnish all labor and materials necessary for that purpose. The contract contained, among others, the following provisions:

"The Water Engineer shall have the power to make such changes in the plans or additions thereto as may be found advisable during the progress of the work, and should such changes or additions involve the execution of a class of work not herein provided for, the Contractor shall perform the same as directed and shall be paid therefor an amount equal to its actual cost to him for labor and materials plus twelve and one-half per cent. for profit. The Contractor must

submit to the Water Board satisfactory vouchers for all labor and materials furnished by him in the execution of such work, which shall be classed as 'Extra Work' and must be authorized in writing by the Water Engineer."

"Payments for work shall be made as follows: On or about the last day of each calendar month, the Engineer in charge shall make an estimate of the value of the work done and material furnished to that date, and within thirty days thereafter there shall be paid to the Contractor ninety per cent. of such valuation, less previous payments. Final payment of ten per cent. of the contract price may be withheld for a period of thirty days after completion and acceptance of the work in writing by the Water Board."

"The payment and acceptance of the amounts indicated by the Engineer in charge shall not be considered as binding upon either the Contractor or the Mayor and City Council of Baltimore should the Mayor and City Council of Baltimore have any doubt as to the accuracy and fairness of the estimate, in which event the Water Board may have a true and correct estimate made, upon which settlement shall be based, and which shall be final and conclusive."

"The Water Board shall act as agent for the Mayor and City Council of Baltimore in all dealings with the Contractor; and the work shall be done under the supervision of the Water Engineer as President of the Board. Whenever the word 'Engineer' is used herein, it shall be understood as referring to a duly authorized representative of the Water Board."

Under the head of specifications the contract contained the following provisions:

"Diversion Sewer with vitrified brick invert and concrete walls and arch, shall be built as shown on the plans," &c.

"Excavated material will be classified for payment as 'Earth,' 'Loose Rock' and 'Solid Rock.' 'Earth'

shall include macadam stones, loam, sand, clay, 'soft rotten rock,' gravel or other earthy material, including boulders of volume not greater than two cubic feet. 'Loose Rock' shall include seamy hard rock that may be economically loosened with pick or bar in pieces of no greater volume than two cubic feet, and also boulders that may be economically broken up for removal by mudcapping or otherwise without drilling. 'Solid Rock' shall include solid ledges or large boulders requiring to be drilled and blasted for removal."

"Excavated material will be paid for on 'place measurement,' and prices shall include back fill and disposal of surplus material at points designated, &c. * * * Payments will be based on widths of trenches as follows:

|  | In Earth. | In Loose or Solid Rock. |
|---|---|---|
| For 69-in. sewer | 97 in. | not more than 109 in. |
| For 60-in. sewer | 84 in. | not more than 96 in. |
| For 18-in. vitrified pipe | 42 in. | 42 in. |
| For 12-in. vitrified pipe | 36 in. | 36 in. |
| For bell mouth and drops | neat lines. | |

Material excavated outside of the above lines unless authorized in writing by the Water Engineer will not be paid for except where sheathing is required, when the additional width necessary will be allowed.

The depth of trenches in earth shall be to the grade established by the Engineer, in loose or solid rock, excavation may extend not more than six (6) inches below the established grade; whenever excavation extends below the established grade the Contractor at his own expense shall refill up to the grade line with approved material, furnishing a solid foundation."

"Proper and sufficient sheathing and bracing shall be used where necessary and cradles or platforms shall be laid in the bottom of the trench should the Engineer so direct. Sheathing shall be withdrawn at the discretion of the Engineer. Sheathing left in place and

timber in platforms or cradles will be paid for at the
proposal prices per foot B. M."

Under the head of "Conditions of Agreement" the contract
also provided:

"It is agreed by and between the parties to this
contract, that the Water Engineer shall determine the
amount and quantity of the several kinds of work
which are to be paid for under this contract, and
shall determine all questions in relation to said work
and the construction thereof, and decide every ques-
tion which may arise relative to the execution of this
contract on the part of the Contractor, and his esti-
mate and decision shall be final and conclusive, unless
modified, changed or disapproved by the said Water
Board."

The contractor agreed to include in his estimate all the
labor and all the material necessary to construct the sewer
in a substantial and workmanlike manner according to the
plans and specification:

"The said estimates to include every item of cost
in the construction and erection of the said diversion
sewer, together with any additional expense which
may accrue to said Contractor for any part of the
work, consequent upon any delays or difficulties en-
countered of any character whatsoever, and the Con-
tractor will not find the said Water Board liable for
any expense over and above the prices as are herein-
after set forth; and the Contractor further agrees that
no claim for extra work shall, under any circum-
stances, be allowed or considered, unless ordered as
such, in writing, by the Water Engineer and approved
by the Water Board."

"And the Contractor agrees to receive, and the
Mayor and City Council to pay, as full compensation
for furnishing all the materials and labor which may
be required in the prosecution of the whole of the
work to be done under this agreement, and in all re-

spects completing the same, the prices set forth below
for each of the various classes or kinds of work to be
done or materials to be furnished, to be paid in the
following manner, viz: Monthly payments equal to
ninety (90) per cent. of the value of the work when
completed as estimated, on or about the twentieth day
of each month, by the Water Engineer or his appointed
representative, and final payment of (10) ten per cent.
reserved upon the expiration of thirty (30) days after
all material and work shall have been furnished in con-
formity with the terms of this contract, and the Water
Board shall have accepted the same, the said Water
Board will pay to the said Contractor whatever money
is due or payable to him for the completion and per-
formance of said work, said prices as follows," &c.

In this clause the City agreed to pay for excavating earth
60 cents per cubic yard; for excavating loose rock $1.20 per
cubic yard; for excavating solid rock $2.75 per cubic yard;
for sheathing and other lumber left in the trench $40.00 per
thousand; for the sixty-inch sewer in place $6.25 per lineal
foot, and for the sixty-nine inch sewer in place $7.25 per
lineal foot, and the contract contained the further provision:
"And the Contractor agrees that all estimates shall
be made by the Water Engineer or his representative,
and that payment will be made on the said estimates
made by the said Water Engineer."

The appellee began the work under the contract in July,
1908; monthly estimates of the work done, &c., were made
out by P. A. Beatty, the resident engineer, and the appellee
was paid the amount of the estimates, less the ten per cent.
retained by the City under the terms of the contract. In
August, 1908, after receiving the first estimate, the appellee
complained of the classification of the material excavated,
and wrote Mr. Beatty asking for a reclassification. This let-
ter was referred to Mr. Quick, the water engineer, who wrote
the appellee that as he had receipted for the work done in

July it was too late to ask for a reclassification of the excavation allowed in that estimate, but that he would be glad to consider any complaint of any subsequent classification, and in answer to a further request of the appellee for a reclassification of said material Mr. Quick wrote him that he had referred the matter to Mr. Sudler, engineer in charge, and requested him to meet the appellee and go over the matter with him.

On October 8th, 1908, Mr. Quick wrote the appellee as follows:

"Mess. J. B. Clark & Co.,

"10 E. Lexington Street, City.

"Gentlemen:

"We have found it necessary to have additional concrete outside of the lines called for by the plans governing your contract. I understand that you have agreed to put in this concrete at $8.00 a cubic yard. Therefore, you are hereby authorized to place such extra concrete in the arch or sewer invert where directed either by myself, Mr. Sudler or Mr. Beatty, at eight dollars ($8) per cubic yard.

"Please advise me in reply to the above by return mail if you will undertake this work as directed.

"Yours truly,

"(Signed)    Alfred M. Quick,

"Water Engineer."

To that letter the appellee replied as follows:

"Baltimore, October 12, 1908.

"Mr. Alfred M. Quick,

"Water Engineer,

"City Hall, City.

"Dear Sir:

"Your letter of October 8th with reference to extra concrete. The price of $8.00 per cubic yard for invert concrete is very satisfactory to us.

"The cost of arch concrete will be greater on account of richer cement mixture and more difficult form work. We would suggest that $9.00 per cubic yard

for arch work would leave us fair profit and would be slightly lower than figured in our bid for similar work.

"(Signed)    C. B. Clark & Co."

In answer to the appellee's letter of October 12th Mr. Quick wrote him:

"Gentlemen:

"In reply to yours of the 12th instant, in which you say that $8.00 is a satisfactory price to you for the extra concrete for the invert, but suggest $9.00 for the concrete in the arch of the sewer, I would say that we agree to allow $9.00 the price you suggest; so therefore you will proceed with the extra concreting on the basis of $8.00 per cubic yard for the concrete used in the invert and $9.00 a cubic yard for that used in the arch.

"Yours truly,

"(Signed)    Alfred M. Quick,

"Water Engineer."

On December 10th, 1908, Mr. Beatty wrote the appellee that in order to avoid the use of concrete outside of the section authorized by the plans he should bring up the bottom of the trench to the grade of the bottom of the sewer with suitable material properly rammed and compacted, and giving him the following directions in order to avoid the use of concrete on the sides of the trench:

"Where the section has run wide in rock, you have the option of filling with concrete to the sides of the trench—for which no excess will be allowed except at those points and in such quantities as I shall authorize in writing—or of forming over such openings to the height of the upper line of brick invert (to which point the concrete invert is always brought in the first operation) in such a manner as to give the full outside lines of the sewer section. This forming will be of one-inch plank where the voids are small and irregular and the points of rock afford frequent sup-

port. Of two-inch planks where the voids are large
and much stiffness required to maintain line. Before
the concrete is placed, the voids shall be thoroughly
filled with rammed material suitable to make compact
work. The inspector shall direct where the two-inch
plank shall be used, and should a discussion arise, the
engineer will inspect the point and decide upon the
thickness of the forming necessary. The inspector will
keep an accurate record of all material thus used for
forming and you will be paid for such as must re-
main in the work. The intention being to avoid the
claims for excess concrete at points not authorized by
the engineer—and to use as little forming lumber as
practicable in holding the concrete to the neat lines."

In reply to this letter of Mr. Beatty the appellee wrote him
on December 15th that the method suggested by him for
avoiding the use of concrete on the sides of the trench would
delay the concrete work and would cost him more than the
amount of timber involved would be worth, and asking him
to suggest some other method that would compensate him.
On December 10th, 1908, the appellee wrote Mr. Quick en-
closing a statement of accounts for extra concrete and other
items, for which he asked payment in his November esti-
mate, and stating that the same had been taken up with the
resident engineer who, because of his "lack of authority to
handle same," had referred the appellee to him. On Decem-
ber 11th the appellee also wrote Mr. Quick complaining that
Mr. Beatty in computing the excavation allowed him had
"figured only on 109 inch width of trench allowed for rock
excavation in connection with 69 inch sewer"; stating that
under the terms of the contract when sheathing is required
additional width necessary should be allowed; that owing to
the formation of the rock he was required to excavate it was
not possible to sustain the sides of the cut "otherwise than by
a slope," and asking that he "be allowed to consider sections
to be computed for settlement."

In reply to these several claims of the appellee Mr. Quick wrote him on January 5th, 1909, as follows:

"I have carefully considered your claim for extra compensation on your contract with the City for building the diversion sewer around the Forest Park Reservoir.

"With regard to your first claim for certain allowances for extra concrete, we told you exactly where the extra concrete was to be placed, and gave you no reason to suppose that the same order applies to other places. This applies to all voids whether in the side or bottom of the trench. * * * The simple fact is that you were directed to place a certain amount of extra concrete, both in the sides and bottom of the trench, and you have been paid for every yard of such concrete, and you should not have put in any extra concrete which you were not authorized to put in by us. * * *

"As to your third claim, the specifications state distinctly that 'cradles and platforms shall be laid in the bottom of the trench should the engineer so direct. Sheathing shall be withdrawn at the discretion of the engineer, sheathing left in place and timber in platform or cradles will be paid for at proposal price.' You have been paid for every foot of timber in cradles and platforms and every foot of timber in sheathing which you have been directed by us, under the authority of the specifications giving us that discretion, to leave in. That is the only thing we have to be sure of in regard to this claim. * * * In regard to the eighth claim: You have been allowed through rock a width of 109 inches from the bottom of the trench up to within 10 feet of the surface and a width of 121 inches for the remaining 10 feet. This is a liberal allowance for sheathing in either rock or earth, and is all that you are entitled to under the specifications. While we do not admit that the sides of a trench must be excavated to any definite slope in this seamy or irregular rock, or indeed in any rock, even

if such were the case the above statement would hold good, since the character and structure, or difficulties encountered in excavating the rock do not under the specifications enter into the question, a definite or maximum width of trench for which payment will be made being specifically stated. I see no objection, however, to allowing you 'loose rock' price for material in such slips as, in the judgment of the engineer in charge, may not be due to a want of care in excavating the trench or failure to properly sheath the same, and I shall instruct Mr. Beatty to make such an allowance.

"Yours truly,

"Alfred M. Quick,<br>"Water Engineer."

On January 28th, 1909, Mr. Quick again wrote the appellee, stating that he had taken up the matter of his claims with the City Solicitor and the Water Board and that the Water Board had authorized him to settle the claims for extra concrete and additional excavation upon the terms set out in the letter with the expectation that he would proceed at once to complete the work. This offer of settlement so far as the offer to pay for extra concrete was concerned was not accepted by the appellee. No concreting was done by the appellee after December 12th, 1908, and the work under the contract was not resumed until March, 1909.

The sewer was completed in September, 1909, the work was accepted by the Water Board October 11th, 1909, and the final estimate of the work, &c., dated October 11th, signed by Mr. Beatty, resident engineer, Mr. Sudler, assistant engineer, and approved by Mr. Quick and the Water Board, shows that the total value of the work done was $60,086.64, and that the balance due the appellee, being the amount retained by the City, was $6,008.67, of which balance $3,000.00 was paid the appellee in November, 1909, and the balance was retained by the City until the final adjustment of the "dis-

puted points between" the appellee and the City and the execution of a proper release by the appellee.

This suit was brought by the appellee in the Court of Common Pleas in May, 1910, but the trial of the case, which resulted in a judgment in favor of the appellee for $13,-666.63, did not take place until October, 1915.

The claim of the plaintiff is for excavation in addition to that allowed in the estimates as follows: For excavation below the grade line established by the engineer as the bottom of the trench, $661.41; for excavation beyond the width of trench fixed by the specifications, in addition to that allowed in estimate, $2,754.00, and for error in classification of material excavated, $5,483.90. The plaintiff also claims $883.55 for extra concrete placed in voids below the grade line and on the sides of the trench from October 8th to December 10th, 1908; $1,246.88 for sheathing left in the trench; $3,-180.00 damages due to delay in the prosecution of the work caused by the City; $3,008.70, the balance due him on the final estimate, and interest on these several amounts from November 15th, 1909.

In the record of nearly four hundred pages there are thirty-seven exceptions to the rulings of the Court below on the evidence, and one to its action on the prayers. Only two of the exceptions to the evidence were pressed in this Court, and in disposing of these and the prayers we shall not attempt to discuss the evidence in detail or to refer to it further than is necessary in considering the legal propositions involved.

The contract, as we have seen, provided that the Water Engineer should "determine the *amount* and *quantity* of the several kinds of work" to be paid for under the contract, determine all questions in "relation" to the "work" and "the construction thereof," and "decide every question" relative to the execution of the contract "on the part of the contractor," and that his estimate and decision should be final and conclusive, unless modified, changed or disapproved by the Water Board. Now it must be conceded that all of the work for

which the appellee claims payment in this suit, and all the
items of his claim, except the item of balance due on the final
estimate and damages due to delay caused by the appellant,
are embraced in the broad terms of the above provision, and
were passed on by the Water Engineer. The effect of such
an agreement, and of the decision of the person to whom such
authority is committed has been frequently considered and
decided in this State, where the agreements have been en-
forced and the decisions *of the engineer* have, in the absence
of fraud or bad faith, been uniformly upheld. See *A. & B.
R. R. Co.* v. *Ross,* 68 Md. 310; *M. & C. C. of Balt.* v. *Tal-
bott,* 120 Md. 354, and *M. & C. C. of Balt.* v. *Ault,* 126 Md.
402, and the cases therein cited. The appellee recognizes
the force of these decisions but contends, in respect to the
claims for additional excavation, that under a proper con-
struction of the contract he was entitled, where sheathing was
required, to the "additional width" of trench "necessary,"
and in loose and solid rock to six inches below the estab-
lished grade; that the Water Engineer was not authorized to
construe the contract or to deprive him of the benefit of those
provisions, and that he was not allowed the six inches below
the grade line or the additional width according to actual
measurements of the trench. We can not agree with this con-
struction of the provisions referred to. It was the evident
intention of the parties to the contract to limit the depth of
the trench to the grade established by the Water Engineer,
but realizing that that line could not be rigidly adhered to in
excavating solid or broken rock, they made provision for an
allowance for excavation below that line, not exceeding six
inches, when necessary. They clearly did not intend to estab-
lish a *different grade* for loose and solid rock excavation, but
simply to provide for an allowance for increased depth that
was likely to occur in loose or solid rock excavation, and
*only* when it did occur. The resident engineer testified that
while he did not allow for excavation six inches below the
grade, "the plaintiff in order to do the work had to blast out
in irregular spaces below the estimated line," and that he

"gave him the breakage line." The provisions for additional width necessary where sheathing was required did not require the engineer to allow the *entire width* to which the trench was excavated, but only such additional width as was *necessary,* and there is evidence to show that the Water Engineer did, where sheathing was required, allow such additional width as he deemed necessary. But apart from the fact that there is evidence tending to show that these allowances were made, the parties to the contract expressly agreed that the Water Engineer should determine the *amount* and *quantity* of the work to be paid for under the contract, and that his decision should be final unless modified by the Water Board. In *Talbott's case* the contract contained a similar provision, and the contractor contended that it was for the Court and not the engineer to construe the contract, but the Court held that the decision of the engineer was final, and, speaking through CHIEF JUDGE BOYD, said: "That section in terms authorized the engineer to determine *the amount* of the work which is to be paid for under the contract. It would be difficult to imagine any question which might have arisen which more clearly comes within that provision than the one we are now considering. If he could not determine whether the amount was to include the thirteen or twelve inch sewer *plus the half-inch of plastering on it,* or was not to so include the half-inch, then what could he determine under that provision?" In *Ault's Case,* where the Court was construing a like provision, we said: 'One of the provisions of the contract to be fulfilled by the contractor was that the work was to be completed within 150 working days, and it is clear that the Harbor Engineer was authorized to decide whether that provision had been complied with, and in doing so to determine the number of days for which they were entitled to credit, in order to decide how many *working days* they were engaged in the work. * * * But he *was* authorized to decide what delays the contractors were subjected to and the *extent* of those delays, otherwise he would be unable to decide whether the contractor had fulfilled the contract." In the case at bar

unless the Water Engineer could decide the amount of excavation to be paid for under the contract it is difficult to see what he could determine under the provision in question. As the Water Engineer decided that the appellee was not entitled to an allowance for the additional excavation claimed, and as there is no evidence to show that his decision was tainted with fraud or bad faith, we must hold that his determination of the matter is final, until modified by the Water Board.

What we have said applies with equal force to the claim for extra concrete from October 8th to December 10th, 1908. While there is some confusion in the language of the contract as to the authority of the Water Engineer to order the extra concrete work without the approval of the Water Board, that authority seems to have been accorded him by the construction placed upon the agreement by both of the parties to it, and we think the appellee was authorized by the letters of October 8th and October 19th, 1908, to do the extra concrete work as therein mentioned. But these letters only authorize the extra concrete to be placed "where directed either by myself (Mr. Quick) Mr. Sudler or Mr. Beatty," and the only question presented by this claim is entirely one of fact. The City contends that the appellee was allowed in the estimates for all concrete that was placed "where directed" by the engineers, while the appellee contends that he was not, and the City further contends that the appellee placed such concrete at points where he was not directed to place it. This matter was submitted to the Water Engineer and he decided that the appellee had been allowed all concrete placed at points where he was authorized to place it, and there is no evidence to show that his decision was affected by fraud or bad faith.

The claims for lumber or sheathing and for erroneous classification of the excavated material present different propositions. The contract provides that proper and sufficient sheathing "shall be used when necessary. * * * Sheathing shall be withdrawn at the discretion of the engineer. Sheathing left in place and timber in platforms and cradles will be paid for

at proposal prices per foot B. M." Under this paragraph of the contract the appellee was clearly entitled to be allowed for all sheathing left in place that the engineer did not order *withdrawn.* Now the evidence tends to show that he was not allowed for any timber or sheathing except what the engineer ordered *to be left in the trench,* and he was not paid for sheathing which was left in the trench and not ordered to be withdrawn, and in the letter of January 5th, 1909, to the appellee Mr. Quick states that the appellee had been paid for every foot of sheathing "which you have been directed by us, under the authority of the specifications giving us that discretion, to leave in." This evidence therefore shows or tends to show that the appellee was not allowed for sheathing for which he should have been paid under the terms of the contract. Now it is true, the Water Engineer passed upon and decided against this claim of the appellee, but in doing so he disregarded, overlooked or misconstrued the plain provision of the agreement. He had a right to decide what sheathing was *not* ordered withdrawn by the engineer and left in the trench, in order to decide the *amount* of sheathing the appellee was to be paid for, but he *was not* authorized by the contract to decide the amount of sheathing the engineer ordered to be left in the trench as the basis of the allowance to the appellee, and his decision was not therefore within the terms of the submission to his determination or binding upon the appellee. The sheathing to be paid for under the contract was the sheathing the engineer *did not* order withdrawn, and by the terms of the agreement the Water Engineer was authorized to determine the amount to be paid for that sheathing. In *Talbott's Case,* where the Court decided that it was the duty of the City under the contract to remove certain pipes the presence of which greatly increased the cost of the work done by the contractor, CHIEF JUDGE BOYD said: "We have not in this connection discussed the powers of the engineer, as we do not think he had authority to disregard the provisions of section 155 and thereby prevent recovery by plaintiffs for the

·extra cost," and in *Ault's Case,* the Court said: "He (the Harbor Engineer) could not, of course, deprive the City of the stipulation in regard to liquidated damages, or withhold from the contractors credit for any delays for which they were not responsible. These rights were secured to the City and to them by the contract."

The contract provided in reference to classification of excavated material that it should be classified as earth, loose rock and solid rock, and what should be included in each of those terms, and the City contracted to pay for excavating earth 60 cents per cubic yard, for loose rock $1.20 per cubic yard, and for solid rock $2.25 per cubic yard. It is quite evident that this classification provided for in the contract was based upon the difficulty the contractor would encounter and the expense he would incur in excavating the different materials mentioned, and it is equally apparent that errors or negligence on the part of the engineer in classifying the material were calculated to work a serious loss to the contractor. The plaintiff offered evidence tending to show that the course the resident engineer pursued in classifying the material excavated was highly improper, and that it was impossible for him to arrive at a proper classification by the method he adopted. This evidence, which we need not refer to more specifically, may be true or it may not be true. It was for the jury to determine its weight. The evidence also tends to show that the decision of the Water Engineer was based mainly if not entirely upon the classification made by the resident engineer. This evidence was, we think, evidence tending to show, and from which the jury might have found, that the decision of the Water Engineer in respect to the classification of the material was affected by bad faith. Not bad faith in the sense that he purposely or intentionally wronged the appellee, or knowingly disregarded his rights, but in the sense that his decision was based upon a classification characterized by gross negligence or incapacity on the part of the resident engineer. In *Wilson* v. *York & Md. R. R. Co.,* 11 G. & J. 58, the plaintiff asked the Court to in-

struct the jury, as a modification of defendant's second
prayer, that. gross negligence on the part of the engineer
would, in contemplation of law, amount to fraud, or want of
*bona fides.* The Court granted the defendants' prayer, and
refused "the plaintiff's prayer of modification," adding the
following qualification thereto: "If the jury should think
that there was gross negligence on the part of the engineer
in making the estimate of the water expenses under the con-
tracts, it is evidence from which the jury may infer that he
did not act fairly and *bona fide* in making the said estimate."
On appeal JUDGE STEPHEN said in regard to this ruling of
the lower Court: "But we think the Court were right in re-
jecting the plaintiff's prayer of modification of the defend-
ants' second prayer, and were right in their qualification of
the same, because we do not think that gross negligence would,
in construction of law, amount to fraud, but was only evi-
dence to be left to the jury, from which they might infer
fraud, or the want of *bona fides* in the making of said esti-
mate." This statement of the Court was quoted with ap-
proval in *Lynn* v. *B. & O. R. R. Co.,* 60 Md. 404.

In regard to the claim for damages, the Water Engineer
wrote the appellee on October 8th and 19th to do the extra
concrete work where directed by him or Mr. Sudler or Mr.
Beatty. Thereafter a dispute arose between the appellee and
the resident engineer in reference to allowance for this extra
concrete, and the engineer insisted that he had allowed the
appellee for all concrete that he ordered to be placed in the
trench. As we have said the evidence shows that no concrete
work was done by the appellee after December 12th, 1908,
until the work was resumed in March, 1909, and the plain-
tiff offered evidence tending to show that the reason the work
was not done during that interval was that he could not get
from the engineer orders in writing for the extra concrete
work he was required to do under the directions given him
in the letters of October 8th and 19th; that he was damaged
by this delay to the extent of his claim for $3,180.00, and
that the delay was caused by the refusal of the engineer to

give him written orders for the extra concrete work he was
required to do.  In view of the provisions of the contract, and
the dispute that arose between the resident engineer and the
appellee, we think the latter was justified in demanding writ-
ten orders for the extra concrete work, and that if the delay
in the work was caused by the refusal of the engineer to give
him written orders for this work, he was entitled to recover
whatever damage he sustained by reason of such delay.  The
provision in the contract requiring the estimate of the con-
tractor to include in his estimate every item of cost in the
construction of the sewer, "together with any additional ex-
pense which may accrue to said contractor for any part of
the work, consequent upon delays or difficulties encountered
of any character whatsoever" was evidently not intended to
cover delays of the kind referred to in this case.

The right of the plaintiff to recover the balance of $3,008
due on the final estimate, with interest in the discretion of
the jury, was conceded by the defendant's prayers, and was
not disputed in this Court.

It follows from what has been said that there was error in
the granting of the plaintiff's first, second and fourth prayers
as modified.  These prayers entirely ignore the effect of the
evidence showing that the Water Engineer determined the
amount and quantity of the excavation the appellee was to be
paid for under the contract, and the amount of the extra con-
crete he was to be paid for.  The Reporter is requested to set
out the granted prayers of the plaintiff and the rejected
prayers of the defendant in his report of the case.  We find
no reversible error in the granting of the plaintiff's fifth
prayer as modified.  The concluding portion of this prayer
was not necessary to entitle the plaintiff to recover for the
sheathing left in the trench, and was calculated to confuse the
jury, but not to the prejudice of the defendant.  We see no
objection to the plaintiff's sixth prayer, and the right of the
plaintiff to recover the balance due on the final estimate seems
to have been conceded.  The plaintiff's seventh prayer was
properly granted, but there was error in the granting of his

eighth prayer, which is entirely too general, and fails to give
the jury any guide by which to estimate the damages caused
by the delay referred to. The plaintiff's ninth prayer was
calculated to mislead the jury. The express promise of the
defendant was to make the final payment after the expiration
of thirty days after the work had been completed and ac-
cepted by the Water Board, and we think the plaintiff was
entitled to interest, in the discretion of the jury, from that
date on the amount the jury found to be due for *work done*
and *materials furnished* by him under the contract.

It also follows from what we have said that there was no
error in the rejection of the defendant's first and second
prayers. The decision of the Water Engineer in respect to
the two claims for excavation and the claim for extra con-
crete was binding upon the plaintiff, but, as we have said,
there was evidence tending to show that his decision in regard
to the claims for sheathing and erroneous classification of the
excavated material was not, for the reasons we have stated,
binding upon the plaintiff, and the damages caused by the
delay referred to were not within the terms of the submission
to his determination. The defendant's third, seventh and
ninth prayers asserted that the plaintiff had offered no evi-
dence legally sufficient to support his claims for excavation
and extra concrete work and we think they should have been
granted. The fact that the Water Engineer passed upon these
claims is conceded, and we have said that his decision was
binding as to them, there being no evidence that it was af-
fected by fraud or bad faith. The defendant's fourth, fifth,
sixth, eighth and tenth prayers are disposed of by what we
have said in regard to the claims therein referred to, and
were properly refused. What we have said in reference to
the prayers disposes of the defendant's special exception to
the plaintiff's prayers.

The first and second exceptions are to the admission in
evidence of Mr. Quick's letter of January 28th to the appel-
lee and the resolution of the Water Board authorizing a set-
tlement of the plaintiff's claims. They were objected to by

the defendant on the ground that they were offers of com-
promise. An examination of the letter and resolution con-
vinces us that these objections should have been sustained.
They were simply an offer of settlement of the disputed
claims of the appellee. It is true the resolution does disclose
that the Water Engineer had consulted the City Solicitor
before recommending the proposed compromise authorized by
the Water Board, but the evidence also shows that the Water
Engineer had rejected the claims of the plaintiff in his letter
of January 5th and there is no evidence to show that he had
consulted the City Solicitor before doing so. The fact that
the work was resumed in March upon terms somewhat similar
to the terms of the proposed compromise does not make the
letter and resolution admissible as the *basis* of the subsequent
dealings of the parties.

The other exceptions to the evidence were not pressed in
this Court. Some of the evidence referred to may not have
been admissible, but the rulings were not such as were cal-
culated to seriously prejudice the defendant, and would not
constitute reversible error.

The conclusion we have reached is the result of a careful
examination of all the evidence, and of the authorities we
have referred to and those cited and relied upon by the par-
ties, and, because of the errors indicated we must reverse the
judgment of the Court below and remand the case for a new
trial.

> *Judgment reversed, with costs to the appel-
> lant and new trial awarded.*