C. I. HUTCHINSON, Ira Hutchinson, R. C. Hutchinson and G. F. Masters, Doing Business as Copartners under the Firm Name of Hutchinson Hardware Company, Plaintiffs and Appellants, v. BOHNSACK SCHOOL DISTRICT, a Municipal Corporation, Defendant and Respondent.

(199 N. W. 484.)

**Contracts — certificate by architect to completion of work not conclusive on owner as against failure of contractor to comply with specifications.**

1. Under a building contract providing that:

"The architect shall have general supervision and direction of the work. He is the agent of the owner only to ₜhe extent provided in the contract documents, and when in special instances he is authorized by the owner so to act; and in such instances he shall, upon request, show the contractor written authority. . . .

"As the architect is in the first instance the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner or with the contractor, but shall use his powers under the contract to enforce its faithful performance by both."

"No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the owner otherwise than under requirements of the specifications," a final certificate by the architect, certifying to the completion of the work, is not conclusive upon the owner as against the failure on the part of the contractor to comply with the specifications included in the contract.

**Contracts — instructions — instruction that provisions in building contract for changes in plans and specifications immaterial, held erroneous.**

2. A provision in a building contract that:

"The architect shall furnish with reasonable promptness additional instructions, by means of drawings or otherwise, necessary for the proper execution of the work. All such drawings and instructions shall be consistent with the contract documents, true developments thereof and reasonably inferable therefrom. The work shall be executed in conformity therewith, and the contractor shall do no work without proper drawings and instructions. In giving such additional instructions, the architect shall have authority to make minor changes in the work not involving extra cost and not inconsistent with the purposes of the building," is for the benefit of the contractor, and an instruction that such provision has no bearing on the case is erroneous and pre-

judicial in an action involving the question as to whether the work done by the contractor complied with the plans and specifications and the contractor contends and offers proofs to establish that any changes that were made were made at the direction of the architect, were necessary, minor, involved no extra cost, and were consistent with the purposes of the building.

Opinion filed June 21, 1924.

Building and Construction Contracts, 9 C. J. § 34 p. 707 n. 90, 91; § 77 p. 738 n. 7; § 115 p. 774·n. 36. Contracts, 13 C. J. § 482 p. 521 n. 18.

Appeal from the District Court of Traill County, *Cooley, J.*
Reversed.

*Hutchinson & Lynch,* for appellants.

*I. A. Acker,* for respondent.

NUESSLE, J. In 1921 the plaintiffs contracted with the defendant school district to provide and install a hot water heating plant in defendant's schoolhouse. The contract was in writing and included specifications and drawings. The plant was installed. In December, 1921, the architect issued a final certificate to the plaintiff, under which the plaintiff was entitled to and did receive the price contracted to be paid thereunder. The defendant accepted and used the plant. Subsequently and in February, 1922, at the request of the defendant, the plaintiff made certain repairs thereon. This action is brought by the plaintiff to recover the reasonable value of such repairs.

The answer of the defendant alleged the making of the contract to install the plant; that the work was not done in accordance with the plans and specifications; that as a result of failure to comply with the plans and specifications on the part of the plaintiff, the plant froze and was thereby broken and injured; that the labor and materials furnished by the plaintiffs, and for the reasonable value of which they sought to recover, were required to repair the said plant; and the defendant denied that it owed the plaintiffs any sum whatsoever. The defendant further set up a counterclaim against the plaintiffs; realleged the facts set up in its main defense; and alleged that by reason of the failure of the plaintiff to install in accordance with the plans and specifications, the defendant had been injured and damaged in addi-

tion to the amount claimed by the plaintiff for such work and labor, and prayed judgment against the plaintiffs for such excess.

The plaintiffs replied, denying the matters set out in the defendant's counterclaim, and alleged that they had entered into a contract with the defendant for the installation of a heating plant; that the same was installed; and that such changes as were made from the plans and specifications were minor changes, necessary, and under the direction and with the approval of the defendant's architect; and that the plant as installed was accepted by the defendant.

The case was tried to a jury, and the defendant had a verdict on its counterclaim. From the judgment entered on this verdict, and from an order denying their motion for judgment notwithstanding the verdict or for a new trial, plaintiffs now appeal.

The contract for the installation of the heating plant is the standard form issued by the American Institute of Architects. Plans and specifications had been prepared by an architect. These were incorporated in and became a part of the contract. The contract is a document of some length. It will be unnecessary to set out the whole thereof. Those portions of the same which we deem pertinent and controlling are as follows:

"Article 3. The architect shall furnish with reasonable promptness additional instructions by means of drawings or otherwise necessary for the proper execution of the work. All such drawings and instructions shall be consistent with the contract documents, true developments thereof and reasonably inferable therefrom. The work shall be executed in conformity therewith, and the contractor shall do no work without proper drawings and instructions. In giving such additional instructions, the architect shall have authority to make minor changes in the work not involving extra cost and not inconsistent with the purposes of the building."

"Article 9. The architect shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the contract documents, and when in special instances he is authorized by the owner so to act; and in such instances he shall, upon request, show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract.

"As the architect is in the first instance the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor with the contractor, but shall use his powers under the contract to enforce its faithful performance by both."

"Article 16. Neither the final certificate nor payment nor any provision in the contract document shall relieve the contractor of responsibility for faulty materials or workmanship, and he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom which shall appear within a period of two years from the time of installation. . . ."

"Article 24. The owner, without invalidating the contract, may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract, except any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

"Except as provided in articles 3, 9 and 18, no change shall be made unless in pursuance of a written order from the owner, signed or countersigned by the architect, or a written order from the architect stating that the owner has authorized the change, and no claim for an addition to the contract sum shall be valid unless so ordered."

"Article 27. If the contractor has made application as above (for payments) the architect shall not later than the date when each payment falls due issue to the contractor a certificate for such amount as he decides to be properly due.

"No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the owner otherwise than under articles 16 and 29 of these conditions or under requirements of the specifications, and of all claims by the contractor except those previously made and still unsettled."

The specifications provide:

Page 11–M. "No change from plans and specifications is to be made without the previous consent of the board and the approval of the architect. The owner, however, reserves the right to alter or modify

the work under his contract as set forth in the drawings and specifications under the architect's directions, and shall be at liberty to make such deviations in the installation and materials without invalidating the contract.

"All such changes and modifications must be previously sanctioned and approved by the architect, and when the changes involve an additional expense to the contractor. . . ."

Page 12–M. "The contractor agrees to hold himself responsible for any defects which may develop in any part of the installation furnished by him, and to replace and make good without expense to the owner any such faulty parts during a period of one year from the day of final acceptance of the work. The acceptance of the installation will not waive this guaranty."

Page 14–M. "The right is reserved by the architect to slightly change the positions of any pipes to suit conditions of the work before such pipe or pipes are installed.

"All lines are to be properly graded in the direction of flow, and all horizontal pipes are to have a fall of approximately $\frac{1}{2}''$ to each 10'. In all cases all rising lines are to be plumb and straight, and all pipes are to be maintained to the size shown, and must be so installed as to prevent lodgment of water at any point."

The court in its charge to the jury quoted article 24 of the contract, and after so doing charged them that "articles 3, 9 and 18, referred to in this section, have no bearing on this case so that it will be unnecessary for me to refer to them any further." The court also gave the following instruction:

"If, therefore, you should find from a fair preponderance of the evidence that one of the pipes constituting a part of said plant was not put in place according to the plans and specifications, and that the goods, wares and merchandise and labor furnished by plaintiffs to defendant were so furnished because of the failure of plaintiffs to install said pipe in accordance with the plans and specifications, and that the said change in the said installation was made without any written authority from defendant or from the architect, then you should find for the defendant upon the plaintiff's cause of action, unless you should find that the change made, if any, was only slight or immaterial and that such change was made necessary in order to suit

the condition of the work before such pipe was installed, or unless you should find from the evidence in the case that the defendant, with full knowledge of the location of the said pipe, as it was left by the plaintiffs, accepted the work and paid for it, in either of which cases you should find for the plaintiffs."

The appellants duly excepted to these portions of the charge, and now urge error on account thereof.

It appears that during the progress of the installation it became evident that certain pipes could not be installed as required by the plans and specifications. The appellants at once communicated this fact to the architect. The architect went to the building and gave directions as to how the installation should be made. This entailed somewhat of a change from the plans and specifications. The architect illustrated how the change was to be made by a drawing upon a board. The pipes were installed in accordance with such direction so given. No additional charge was made. The respondent did not authorize such change and had no knowledge of the same. It appears that by reason of such change certain of the return water pipes ran through the cold air ventilating duct, and that water stood in the pipe there instead of in the boiler room. As a consequence such pipe froze and burst, and the injury was occasioned which the plaintiffs repaired.

The appellants on this appeal complain on account of the rulings of the court on matters of evidence; on account of the action of the court in denying their motion for a directed verdict and their subsequent motion for a judgment notwithstanding the verdict or for a new trial; and on account of certain of the instructions to the jury heretofore set out.

The appellants contend that the architect was the agent of the owner; that under the terms of the contract, his approval and acceptance of the work done thereunder by the appellants and the issuance by him of a final certificate was conclusive upon the respondent. The appellants cite numerous cases in support of such contention. We think, however, that each case depends upon its own particular facts, and that in the instant case the contract will not bear such an interpretation. The intention of the parties at the time the contract was executed must control and be given effect as far as possible. Comp. Laws, 1913, §

5896. And the whole contract must be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Comp. Laws, 1913, § 5901. Article 9 of the contract defines the status and authority of the architect. Article 16 provides that "Neither the final certificate nor payment shall relieve the contractor of responsibility for faulty materials or workmanship;" and this provision is reinforced by page 12–M of the specifications. It is also stipulated by article 27 that "No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the owner otherwise than under articles 16 and 29 of these conditions *or under requirements of the specifications.*" Thus it is made plain that the issuance of the final certificate, payment thereunder and the use of the work does not waive any claim because of faulty materials or workmanship or on account of failure to comply with the specifications.

Appellants insist that on the record there is no question as to materials or workmanship in this case. In this we think they are right. It does not appear that the materials used were in any way defective or of inferior quality, nor does it appear that the work done was faulty in any respect or lacking in any reasonable requirement, if in fact the plant was installed as required by the plans and specifications as included in the contract or as modified by the proper direction of the architect. The contractors were not concerned with the propriety of the plans and specifications. Whether they were good or bad, whether the plant as installed would heat the building or freeze in winter, was no concern of theirs. They were concerned with the proper execution of the work under those plans, and with the furnishing of materials suitable for the purposes for which they were required thereunder. In fact, respondent made no contention that either materials or workmanship were faulty, for the repairs which it procured to be made by the appellants and out of which this suit arose, put the plant in its original condition. But though the workmanship and materials were without fault or defect, it is undisputed that the work was not done in accordance with the original plans and specifications. Such being the fact, the first contention of the appellants that the

architect's final certificate was conclusive on the defendant must be resolved against them. Appellants' proposition that the evidence is in any event insufficient to justify the verdict is wholly bottomed upon this contention, and must, therefore, also fail.

The next question is, the work not being done in accordance with the original plans and specifications, was the deviation from those plans and specifications proper and justifiable on the part of the contractors under the circumstances as disclosed, and did the court err in its instructions in submitting this question to the jury? Appellants urge that while some changes from the specifications were made in the installing of the plant that such were minor changes which did not involve extra cost and were not inconsistent with the purpose of the building; that such changes were necessary in order to install the plant, and were made under the direction of the architect; that under the provisions of article 3 the architect had authority to give such directions without the order or consent of the owner. Appellants contend that they were entitled to invoke the provisions of Article 3 and were not confined to page 14–M of the specifications; that while the court submitted to the jury the question of the character of the change under page 14–M of the specifications, that they were prejudiced by reason of the charge that the provisions of article 3 had no bearing on the case. They urge that it cannot be said as a matter of law that the changes made under the direction of the architect were not minor changes and inconsistent with the purposes of the building, and that they were entitled to have these questions passed upon by the jury as well as the questions which were submitted. For these reasons, say the appellants, the charge as given was erroneous and prejudicial.

We think that there is good ground for this position on the part of the appellants. All the provisions of the contract must be considered in determining its meaning and effect. It defines the rights and obligations of the respondent—the owner, the appellants—the contractors, and the architect. Article 24 and page 11–M of the specifications were for the particular benefit of the respondent. They permitted modifications and alterations if so ordered by it, and insured against substantial change without its consent. On the other hand, page 14–M of the specifications was for the benefit of the architect. This provision enabled him to supervise the work of construction,

and as it went forward to order such slight changes as the circumstances might require without the necessity of a reference to the respondent, at the same time safeguarding respondent. Lastly, article 3 was for the benefit of the appellants, the contractors, so that when in the course of construction it appeared that the plans and specifications required amplification or some unforeseen difficulty arose which make their execution impossible or impracticable, they might compel the architect to give additional instructions. And that he might do this, the architect was authorized to make minor changes so long as they did not entail extra cost and were consistent with the purposes of the building. It seems to us that article 3 was designed to cover just such a contingency as appellants contend occurred in this case.

It is true that the contract was admitted in evidence and went to the jury. And it is true that the court, in giving his charge, read article 3 to the jury. But it is also true that he expressly charged that article 3 had no bearing on the case, and thereby deprived the appellants of any protection that would result from this provision written into the contract for their benefit. This was prejudicial error.

The judgment must be reversed and a new trial ordered.

BRONSON, Ch. J., and BIRDZELL, CHRISTIANSON, and JOHNSON, JJ., concur.