STEPHEN CALLAGHAN, as Receiver of JOHN H. DUNCAN, INC., Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, July 1, 1931.

*Milton I. Hauser* of counsel [*Joseph T. Flynn* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant.

*Leo T. Kissam,* for the respondent.

MARTIN, J. The receiver appointed for John H. Duncan, Inc., brought this action to recover damages alleged to have been incurred while carrying out the work called for by a contract entered into on May 3, 1927, between the city of New York, acting by the board of transportation, and John H. Duncan, Inc., for the reconstruction of a portion of an elevated railroad on Roose-

velt avenue, east of Willet's Point boulevard, in the borough of Queens, city of New York.

The contract required John H. Duncan, Inc., to take down and reconstruct a certain portion of an elevated railroad and in part to construct new concrete footings on pile foundations, painting and re-erecting the steel superstructure and to perform other work incidental thereto.

John H. Duncan, Inc., completed its contract and the board of transportation on behalf of the city of New York certified to its completion on December 22, 1927.

The complaint demands judgment for the sum of $65,715.98, with interest from March 13, 1928. On the trial the actual amount sought to be recovered was reduced to the sum of $43,601.26, for the reason that subsequent to the commencement of the action corporate stock of the city of New York was returned and a payment made by the defendant to John H. Duncan, Inc., pursuant to a stipulation entered into between the parties.

The jury rendered a verdict, after trial, for the sum of $29,929.66. It is impossible to segregate the items allowed by the verdict which appears to include items of damage for piledriving, damage for delay and the amount retained by reason of the fact that the contract was not performed within the time provided therefor.

The contract provided that " All piles shall be driven in the position and manner and to the depth ordered; if driven in a wrong position or injured in any way by driving they shall be withdrawn and replaced by others.

" In order to assist in compacting the soil under the proposed Railroad column footings the Contractor will be required to drive the outer rows of piles complete before driving any of the piles in the inner rows. It is understood and agreed that the Contractor has taken account of this order of driving the piles in submitting prices for the work under this contract.

" Each pile shall be capable of sustaining safely a load of fifteen (15) tons."

This was an item contract, not a lump sum contract. With reference to compensation, the contract provided as follows: " Item 12-W. For driving timber piles, including all incidental work, the sum of twenty-four cents ($.24) per lineal foot."

The claim of the contractor with reference to the piledriving was stated in the letter of August 18, 1927, as follows: " We wish to call to your attention the fact that we are being required to drive piles on the above job to a much greater bearing capacity than the contract calls for, which is resulting in a considerable loss of time and seriously crippling our equipment.

" The contract did not contemplate the piles being driven in excess of the capacity of bearing a safe load of fifteen tons, and inasmuch as you have ordered us to drive these piles to a greater depth we shall expect additional compensation for the work."

The plaintiff contended that irrespective of the depth to which the piles were driven, when the pile reached a point where it would carry fifteen tons the contractor was at liberty to stop driving the pile unless paid in addition to the price per foot an additional allowance. This contention appears to be absolutely without any foundation.

The contract, as usual, provided that the engineer in charge should decide matters of this kind. He is made responsible for the performance of the work and the city contracts purposely place upon him the responsibility of seeing that the work is properly performed. The plaintiff in effect contends that the contractor was the sole judge of the performance of the work and that his work was complete when the pile reached a point which he believed would carry fifteen tons and that if he drove it any greater distance, irrespective of the depth to which it was driven, he was not only entitled to be paid the unit price for every foot the pile was driven but additional compensation. In this case this additional compensation amounted to several times the contract price.

The claim appears to be the usual one for damages without any basis therefor. The engineer in this case was the sole judge with reference to the depth to which the piles should be driven, and the contract provided for the method of payment, which payment it is admitted has been made in full in accordance with the terms thereof.

The president of the contracting corporation testified on cross-examination, as follows: " Q. I asked you, were you paid for every pile you drove into the ground? Mr. Kissam: Do you mean the delivery or the driving? Q. The driving. A. We were paid the sum of money for driving piles in the ground. Q. How much per pile were you paid for driving? A. That was not the item. Q. Don't you know? I will get it for you. A. It was so much a foot. Q. How much a foot? A. 24 cents. Q. And you were paid for every foot of driving that you did; yes or no? A. Yes. Q. And the more you drove, the more money you got; is that right? A. The more number of feet we had on the estimate, yes. Q. And you are complaining now that we made you drive 85 feet; is that right? That is your complaint now? A. Yes; some of them were 85 feet. Q. *We paid you 85 feet, didn't we, if you drove them 85 feet?* A. *Yes, sir.* Q. *At 24 cents a foot, the contract price?* A. *Yes, sir.*"

It does not require much argument to show that there is no merit in the contention that the contractor could drive a pile to a depth which his employees believed would bear a weight of fifteen tons, and in so doing complete the contract.

In the first instance the engineer in charge is the sole judge of how the work should be done, and unless bad faith, misconduct or a misconstruction of the contract is shown, his decision is conclusive. We believe it is clear that he properly construed this contract. (*Whiteman* v. *Mayor, etc., of New York*, 21 Hun, 117.)

It nowhere appears how much the jury allowed for this item, but it is clear that the allowance was substantial and any allowance requires a reversal of the judgment for the reason that the city was not liable therefor.

There were several other items, a portion of which were probably allowed by the jury. We have no means of ascertaining the items or the amounts allowed. The item of overtime certified to by the engineer may or may not have been allowed. The proof of damages in any event was unsatisfactory and in several instances very speculative.

There are other questions, including the admission and rejection of evidence, which, if we are correct, will not arise on a new trial and it is, therefore, unnecessary to consider them.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.