SPENCER, WHITE & PRENTIS, INC., Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, New York County, May 23, 1945.

*Edgar A. B. Spencer* and *Bernard J. Levy* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel* (*Charles Blandy* and *Guernsey Price* of counsel), for defendant.

SCHREIBER, J. Plaintiff, the successful bidder for a unit price contract with defendant City in construction of a section of the Sixth Avenue subway, seeks recovery herein, after completion of the work, under various causes and theories of action.

The first cause is for items claimed to be due and unpaid under the contract. It has been stipulated that plaintiff is entitled in this cause to recover $81,195.64. The amount of other items is conceded but the right to recovery is disputed. These items will be considered seriatim.

(1) I disallow the extra charge for cast iron rather than vitrified pipe ($196.30); such order was not made by the city and no necessity was shown requiring departure from the contract in this instance.

(2) I disallow the extra claim for extension of drain for toilets on the Sixth Avenue "El." at 14th Street ($180.64) on the ground that this is covered by the lump sum for underpinning and other work on the elevated column and is so specifically stated in the contract (item 153 b) and specifications (89.1 B).

(3) I disallow the claim dealing with gas by-passes ($1,291.16), as I interpret specification 72 (B) of the contract to mean that allowance may be made only for six feet of such pipe and not for any additional pipe used.

(4) I disallow the claim for plastering ($862.01), wherein plaintiff substituted " cement " finish in areas designated by the plans as calling for " plaster ", on the ground that the city

did not order the change and plaintiff has been fully paid for the " plaster " finish.

(5) I disallow the claim for extra compensation for work in support of the sewer at the Waverly Place shaft ($892.65); plaintiff was paid $2,500 to support this sewer, all inclusive (item 109, specification 501), and although, on excavation for this shaft, wooden piles were found to be decayed, it cannot fairly be said that this was an unforeseeable circumstance.

(6) I allow the claim for bracing hollow tile walls ($351.57) in the part of this section of the subway in which walls collapsed under blasting due to inadequate thickness and design. The burden here clearly should not be cast on plaintiff and is not fairly to be included in excavation amounts under subparagraph C, paragraph 169, of the specifications.

(7) I allow the claim for the emergency safeguarding work ($6,803.89) after the run or slide of July 12, 1938, which endangered subway and surface and was hazardous to property and persons; these were extraordinary and unforeseeable conditions the risk of which was not assumed by plaintiff and, indeed, for which the city, at the time, specifically promised to pay.

(8) Likewise the additional borings thereafter taken by plaintiff to ascertain the actual subsoil condition were proper and necessary under the circumstances, were ordered by the city and the cost thereof is allowed ($3,454.60).

(9) Altering track ($1,056.12), additional structural steel ($4,838.78), underpinning side walls of west tunnel ($766.28), are stipulated to be due to the plaintiff, and stopping leaks ($2,394.46), cutting chases ($150.87) and repainting steel ($278.22) are all items which are allowed on the ground that the work was made necessary because the structure was not designed as a waterproof structure and these additional expenses arise solely through insufficient design and are no fault of plaintiff.

(10) The claim for extra compensation for moving waterproofing lines ($1,920.69) is disallowed; although these lines, at some extra expense to plaintiff, had to be moved in order to create room to work on structural steel; and although the original contract drawings showed a clear space of twelve inches, the revised drawings showed plainly that this space would be greatly reduced because of the necessary use of steel stiffeners and, in fact, the defendant voluntarily paid to remove these lines six inches by reason thereof. There is thus no basis for the claim that plaintiff reasonably could not have taken this item into allowance when making its bid.

(11) The claim for extra compensation for reconstruction of the intersecting Hudson & Manhattan Railroad protection walls, the amount of which claim has been stipulated, is denied. The Sixth Avenue subway at this point was to be built on either side of or below the existing Hudson & Manhattan tubes. The protective masonry for the walls of the Hudson & Manhattan tube was different from that shown in the contract drawings, was loose and defective, and brick and hollow tile parts thereof were required to be removed and afterwards replaced. The city correctly contends that plaintiff has been paid in full under the contract for this work. Specification 89.4 (a) provides that payment for the support of the Hudson & Manhattan Railroad tube will be made at a lump sum price stipulated in item 154, for support, maintenance, underpinning, restoration, etc., of the said tube. Plaintiff's attention was called to the supplementary drawings (§ 45, p. 149, contract) showing the nature and position of underground structures, and under section 45 (D) plaintiff was to form its own judgment thereon. Under these circumstances the risk of the conditions actually encountered was clearly on plaintiff under the contract and drawings and may fairly be assumed to be reflected in the bid. In this connection, indeed, it appears that the city erroneously overpaid plaintiff the sum of $6,774.75 and is thus entitled to the amount sought on its counterclaim herein in that sum.

(12) It has been stipulated that plaintiff, if entitled to recovery, is to receive $1,333.75 for relocating air vents. The buildings abutting Sixth Avenue had sewer lines running into the main sewer in the street. In construction of the subway the sewer lines had to be temporarily removed. Plaintiff claims that some of the lines removed and later replaced, and in which air vents had to be relocated, originally had no air vents as required by the Sanitary Code. However, the defendant's engineer properly took the position, as borne out by the testimony, that the required installation of most of the air vents within the building lines was caused by the method adopted by the plaintiff in underpinning operations which disturbed the existing plumbing. Inasmuch as the city was required to and has paid under the contract for the work done outside the building lines and in physical interference with the subway and is not responsible for the work within the building lines, the claim is disallowed.

(13) The contract obligated plaintiff to pump and keep dry the operation as long as it was doing any of the work required under the contract (specification 169 (d), p. 243, contract). Plaintiff asks for $3,211.82 as an additional charge, by reason of delays

in completing the work, with regard to such pumping, in which city-owned pumps were used, and the city counterclaims for $4,573.38 actually paid to plaintiff on this score on the ground that under the contract there was no basis for any such payment. Inasmuch as under the cited contract provision payment for such pumping was included in the excavation prices, and, as hereinafter shown, there is no basis for ascribing any delay to the city, it is clear that the city's contention in this regard must here be upheld and plaintiff's claim overruled and counterclaim allowed.

(14) A claim by plaintiff for $767.17 for twenty-three extra work items is disallowed.

This is a claim for 15% profit to plaintiff on work which a subcontractor performed and charged a profit. Under the contract in defining " actual and necessary net cost " (item 150, subd. G) the city is not obliged to and should not be required to pay more than one profit on any item of work or materials.

(15) The defendant has stipulated that plaintiff is entitled to a recovery for the following: Rock $777.20; tunnel timber $239.20; steel tunnel support $273.50; removal old masonry $47.04; grout $779.45; asbestos panels $83.38.

(16) No determination is necessary as to plaintiff's claim for sales taxes and compensation use taxes which claims were withdrawn without prejudice.

The second cause of action asserts a claim for damages in the construction of the west tunnel based on alleged variances in the physical condition of the subsoil from that contemplated by the contract and drawings; on the change of orders by the City Engineer as a result thereof; and on excessive delay in giving such orders. In essence the second cause is for damages arising from alleged breach of contract while the third cause seeks recovery of the same items on an alternate theory of *quantum meruit*.

Part of such west tunnel was to be constructed in free air, which required sufficient natural rock cover over the subsoil, and part under compressed air, in which metal tubing and other added equipment is essential. The contract and drawings state with some particularity those parts of the tunnel in which the different methods of construction were to be employed but are, nevertheless, replete with warning to the contractor that such estimate is necessarily inexact, subject to conditions actually to be encountered in the field, and that the risk of variance is entirely on the contractor. Indeed the very uncertainty is

the reason for the adoption of the unit price, rather than the lump sum contract, and it may be fairly assumed, on the evidence, that the risk is reflected in the price.

Thus, the drawings (drawing A-1) are stated therein to be " tentative " and " subject to amplification and modification " as " directed by the Engineer ". Again it is provided (contract, § 51 [e]) that use of metal tubing and/or compressed air " shall be determined by local conditions as determined by the Engineer."

There would seem no basis for the claim that the city's failure to allow additional preliminary borings at the city's expense, investigatory of the rock cover over the route of the west tunnel, resulted in crystallization of the estimates in the contract and drawings into warranties of the conditions there tentatively set forth. Even if the borings actually taken were plainly inadequate, in the absence of bad faith, concealment of information at hand or conscious misrepresentation, the city is not liable (cf. *Farub Foundation Corp.* v. *City of New York,* 183 Misc. 636). Moreover, with regard to the borings made it is stated (drawing A-1) that such borings " do not purport to show the actual surface of rock because the earth and rock formations underlying the City of New York are very irregular."

The city clearly did not guarantee, and plaintiff's testimony is that, in any event, there was no reliance on the estimate given, that the respective quantities of the types of work set forth would actually be done, for the contract expressly (art. XIII) provides: " Quantities Only For Comparison Of Bid. * * * the Contractor shall make no claim for damages or for anticipated profits or for loss of profit because of a difference between the quantities of the various classes of work actually done or materials actually delivered and the estimated quantities of items stated in the Contractor's Proposal or because of the entire omission of any of the quanties of items stated in the Contractor's Proposal."

In the course of the work on the west tunnel, in free air operations, a dangerous slide or run occurred followed by a delay of about seven months. When work was resumed the city engineer ordered radical changes. But the contention that these changes give rise to a cause of action or are in breach of the contract is untenable as such orders have not been shown to be gratuitous or unnecessary departures from the contract or that the work reasonably and safely could have been completed in accordance with the original contract and drawings (*Collins* v. *State of New York,* 259 N. Y. 200; *McGovern* v. *City of*

*New York,* 202 App. Div. 317, mod. 235 N. Y. 275). The claim
-that there was an excessive delay on the part of the city is held
insufficient on the facts; within a reasonable time the city was
ready to proceed and the further delay was caused entirely by
plaintiff in seeking modification of the contract.

It is therefore evident that here there has been no express
or other breach or modification of the contract; that the contract
has been performed by the city, and that as to the great part
of the claims made, plaintiff has been paid and is entitled to
no more than the unit prices stated in the contract (*Weston* v.
*State of New York,* 262 N. Y. 46; *Manstin Engineering Corp.*
v. *State of New York,* 288 N. Y. 657; *Kinser Construction Co.*
v. *State of New York,* 204 N. Y. 381; *Del Balso Constr. Corp.*
v. *City of New York,* 278 N. Y. 154; *Callaghan* v. *City of New
York,* 233 App. Div. 263).

That the city's chief engineer, in good faith, thought plaintiff
entitled to a greater return is not binding on the city for it was
not included in his final estimate, which is binding and conclusive
on the plaintiff (art. XXIV, contract), no showing having been
made that the engineer's formal conclusions are tainted with
fraud or bad faith (*New York Building Co.* v. *Springfield Ele-
vator & Pump Co.,* 56 App. Div. 294). The evidence totally
fails to show any coercion upon the said engineer by the Comp-
troller's office. The court regards the engineer's expressions
as to the amount of profit plaintiff should properly have received
under this contract solely as recognizing that plaintiff was
justifiably disappointed in the proceeds and expected profits
of the contract. This however is not a proper basis in law to
award damages (*Weston* v. *State of New York, supra*).

It follows that, full payment under the contract having been
made by the city to the plaintiff, except for items concededly
due by stipulation, the second cause of action, for breach of
contract, should be dismissed for there was no breach; and the
third cause of action, on *quantum meruit,* should likewise be
dismissed, inasmuch as plaintiff must recover for the work
done under the contract at unit prices, or where the work is
nonclassifiable pursuant to the method prescribed by the
contract (item 150). Under the aforesaid stipulation, it is
conceded that plaintiff is entitled to $58,258.82 for the increased
cost of the shield chamber necessitated by the slide or run,
which occurred through no fault of the plaintiff; and in addition
to the sum of $10,267.73 the increased cost of furnishing cast-
iron lining; and while this properly should be included in the

first cause, in view of the consent plaintiff may have judgment in such amounts in the second cause of action, and the third cause will be dismissed.

The fourth cause of action is for interest for delay in making final payment under the contract pursuant to article XXXIX thereof which, insofar as here material, provides that if payment " on any voucher " be delayed, beyond stipulated times, interest at $4\frac{1}{2}\%$ per annum shall be allowed for such period, in lieu of any claim for damages thereby.

It is apparent that, on the facts here, plaintiff can have no cause of action based on this provision of the contract, for there has been no delay or proof of delay in payment " of any voucher ". Indeed, plaintiff concedes that this is so but seeks a construction of this article of the contract so as to entitle it to penalty interest from the alleged time when the city should have certified the work done, the value thereof, and issued a final estimate and vouchers thereon. In short, under a contract provision for penalty interest for delay in payment of " vouchers " plaintiff seeks to recover such interest as to some items where there has been no delay in payment or tender of payment of vouchers and as to others where no vouchers have been issued at all and where, in fact, payment altogether is largely disputed. While it is evident that this contract provision has no application here and that this cause must be dismissed, plaintiff would seem nevertheless entitled to ordinary interest at $6\%$ per annum on the sum herein awarded from April 14, 1943, the date when the final estimate was actually made by the city's engineer and plaintiff's claims thus rejected. The contention that unreasonable delay prior thereto may here be charged to the city is not supported by the facts and it was only on the date stated that plaintiff's right to consider the city in default crystallized. Nothing in article XXXIX of the contract wherein penalty interest is to be in lieu of any damages for delay prevents allowance of such interest for such article, as stated, is limited in its effect to delay in payment of " vouchers " issued and not to nonpayment of disputed claims.

On recapitulation, it follows that plaintiff is entitled to the sum of $172,016.75, less the sum of $11,348.13, the amount overpaid by the city on particular items as hereinabove stated, and should recover the sum of $160,668.62, with interest from April 14, 1943, and the clerk is directed to enter judgment accordingly. Appropriate exceptions to the rulings are granted. Thirty days' stay and sixty days to make a case allowed.

(Supplemental decision, June 12, 1945.)

The decision made on May 23, 1945, is modified so as to allow interest at the rate of 4% from April 26, 1943, the date of the filing of plaintiff's claim with the comptroller.

(Supplemental decision, June 19, 1945.)

The decision heretofore made on May 23, 1945, is further modified as follows: The amount of the claim which was disallowed under item 11 of the decision is $16,673.54; the amount of the claim disallowed under item 13 is $2,378.76. The correct amount of the claim allowed under item 9 is $1,055.12.

Plaintiff is entitled to the sum of $172,015.75 less the sum of $11,348.13 leaving a balance of $160,667.62.