CITY OF GRANVILLE, a Municipal Corporation, Plaintiff and Respondent,

v.

KOVASH, INCORPORATED; and Hartford Accident and Indemnity Company, a Corporation, Defendants and Appellants.

No. 7911.

Supreme Court of North Dakota.

Sept. 17, 1962.

On Rehearing Dec. 11, 1962.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendants and appellants.

Duffy & Haugland, Devils Lake, and Victor V. Stiehm, Towner, for plaintiff and respondent.

STRUTZ, Judge (on reassignment).

This is an action brought by the City of Granville against Kovash, Incorporated, and Hartford Accident and Indemnity Company to recover damages claimed to have been suffered by the City through the failure of Kovash, Incorporated, for whom the Hartford Accident and Indemnity Company was surety, to construct and install a water and sewerage system in accordance with a contract entered into with the City of Granville.

The contract provided for the installation of forty-nine gate valves and boxes and twenty-two hydrants as part of such system. The gate valves were distributed at intervals throughout the system to permit shut-off and control of the water. Among other things, the contract provided that the water mains should be laid at a depth of seven and one-half feet below the surface of the ground and that each hydrant branch should have a minimum cover of seven and one-half feet.

Other provisions of the contract pertinent to this lawsuit are that the project engineer should have general control of the work and that he should decide any and all questions which might arise in the performance of the contract as to quality or acceptability of materials furnished and of work performed, or the manner of performance; that no work was to be done nor any materials used without suitable supervision or inspection by the engineer or his representative, giving to the inspector assigned by the engineer the authority to reject materials or to suspend work until any dispute as to materials or workmanship had been referred to the engineer for his decision. The contract further provided that the engineer's decision on all such questions should be final and conclusive. It also provided for final inspection of the project by the engineer and for final payment to the contractor after the engineer had certified to the City that the work had been "completed in a satisfactory manner and in accordance with the terms of the contract."

There is a final provision in the contract making the contractor responsible for workmanship and materials for one year and providing that the contractor shall "keep the system in repair for a period of one year."

The record discloses that the engineer was unable to be on the job all of the time, and that one of the members of the city council, Mr. Moffatt, was employed by the engineer, with the knowledge and consent of the city council, to act as inspector for the engineer. The engineer paid the inspector for such service and was then reimbursed by the City for payments which he had made to the inspector.

The defense to the claim of the City, that the defendant Kovash, Incorporated, failed to construct the water and sewerage system in accordance with the contract and failed to lay the pipes at the depths required by the contract, was that the system had been constructed and completed under the supervision of the project engineer, or his inspector, and that the terms of the contract made his approval of the work and its acceptance final and conclusive, in the absence of fraud, collusion, or of a mistake so gross as to imply bad faith. The defense further alleges that there was a substantial compliance with the terms of the contract by the defendant.

After completion of the work by the contractor, the engineer certified that the work was acceptable, and upon such certification final payment was made to the contractor

by the City. After certification by the engineer and such final payment by the City, service connections to the system were started by the City. It was when the service connections were being made that it was discovered that some of the water mains had been laid at depths less than the contract required. During the winter which followed, some of the lines froze and broke in several parts of the City. The City thereupon demanded that the defendant Kovash, Incorporated, remedy the situation, and, upon its refusal to do so, this action was commenced. The case was tried to the court without a juruy. From a judgment for the City, the defendants take this appeal, demanding a review of the entire case and a trial de novo.

Several issues are thus presented on this appeal:

First, was there a substantial performance of the contract by the defendant, as claimed by the defendant?

Second, if there was no substantial performance which would require the court to hold that the defendant had substantially performed the terms of the contract, is the plaintiff bound by the action of the project engineer in certifying that the contract had been acceptably performed by the defendant, and does the acceptance and approval of such recommendation of the engineer by the city council and the making of final payment on such recommendation bar the plaintiff City from maintaining this action against the defendant for failure to perform the contract as required by its terms?

Third, if the plaintiff is bound by the certification of the project engineer that the contract had been acceptably performed by the defendant, is the defendant nevertheless liable for payment of any part of the additional costs of repairing the breaks and of lowering the water mains under its guarantee to "keep the system in repair for one year"?

■ Generally speaking, construction of the terms of any contract should be reason-able. In this State, we do have certain statutory enactments which serve as aids in the construction of contracts. Section 9-07-19 of the North Dakota Century Code provides that, in case of doubt or ambiguity, a contract should be construed most strongly against the one who caused such uncertainty to exist. In this case, the interpretation of any doubtful portions of the contract would, under that rule, be most strongly construed against the City, which prepared the contract. But the same section goes on to provide:

> "* * * except in a contract between a public officer or body, as such, and a private party, and in such case it is presumed that all uncertainty was caused by the private party."

Therefore, in this State, in cases such as we have before us here, statutory construction requires that ambiguity or uncertainty in the contract must be presumed to have been caused by the private party, even though the private party had no part in causing the uncertainty.

■ But the rule that a contract made with the public must, in case of ambiguity, be construed most favorably to the public cannot be invoked to change the clear, unmistakable meaning of a contract whose provisions are unambiguous. and plain. 10 McQuillin, Municipal Corporations, 3d Ed., Sec. 29.117.

■■ We will first consider the defendant's contention of substantial performance. Did the defendant substantially perform its contract with the City of Granville? The plaintiff's complaint alleges that the defendant "did not fulfill the terms and conditions of the said contract in that it laid the water mains so that they had a cover of from 5.7 feet to 7 feet and that as a result thereof, said water mains are not adequately protected from freezing and that during the winter of 1957–1958 did freeze * * *"

Under the contract and specifications, the water mains were to be "laid at a depth of

seven and one-half (7½) feet below the surface of the ground" and the hydrant branches were to have "a minimum cover of seven and one-half (7½) feet."

Were these provisions substantially performed by the defendant? The trial court found that the language of the contract requiring water mains to be "laid at a depth of seven and one-half (7½) feet below the surface of the ground" means that the water mains must have a cover of seven and one-half feet.

We concur in this finding of the trial court. We believe that the language of the contract requiring the pipes to be "laid at a depth of seven and one-half (7½) feet below the surface of the ground" would require the entire pipe to be placed seven and one-half feet below the surface. Webster's Third International Dictionary, 1961, defines "lay" as "to place."

Thus, if an object, such as a pipe, is "laid at a depth of seven and one-half (7½) feet below the surface of the ground," the entire object would necessarily be placed that far below the surface. Consequently, the minimum cover of the water mains required by the contract would be seven and one-half feet from the top of the pipe, and the pipe would have to be placed in a trench dug to a depth of seven and one-half feet, plus the thickness of the pipe. The contract provisions, therefore, required that the water mains, as well as the hydrant branches, have a cover of seven and one-half feet.

Does the record disclose that the defendant in this case substantially met these requirements of the contract? The testimony is quite unsatisfactory, since much of it is based on observation of witnesses made some months, or more, before any question was raised as to the depth of the trench bed. However, there is testimony of experts in the record. These experts made testholes to determine the depth at which the pipes were laid. The tests of the plaintiff's expert, Johnson, were made in August of 1958, almost one year after the completion of the job. Various experts testified that there would be a settling of between five and ten per cent after a period of time, one expert testifying that such settling could be even as much as twelve per cent.

While it is true, as contended by the defendant, that the average of these tests, after allowing an average of seven per cent for settling, showed the pipes to be laid at a depth of almost seven and one-half feet, such argument is not convincing. In eleven of twenty-one testholes made by the plaintiff's expert, Johnson, the depth, even after allowing seven per cent for settling, was less than the contract requirement of seven and one-half feet. Several of the testholes showed the pipes to be laid far deeper than the contract requirement, which, of course, made the average depth nearer the required contract depth. But, in North Dakota, a water system whose average depth is a figure required by contract would be very impractical if much of the system were laid at greater than the average depth and yet, once in every block or two, the pipes came up near the surface. The average depth of the pipes in such case might be as required by the contract and yet the system would be of little value and would cause constant trouble in a cold climate because of freezing in those portions of the system placed at less than the required depth.

■ "Substantial performance" of a contract means that the contractor has endeavored to perform the provisions of the contract in good faith, and that he has in fact done so, except as to unimportant omissions or deviations which are the result of mistake or inadvertence and which were not intentional. It contemplates the performance of every important part of the contract. Anderson v. Todd, 8 N.D. 158, 77 N.W. 599; Braseth v. State Bank of Edinburg, 12 N.D. 486, 98 N.W. 79. In the State of North Dakota, where we have rather severe winters, putting a water line down to specified depths is an important part of the contract.

We are therefore of the opinion that, although the average depth of the pipes in the

system may be substantially the same as the minimum-depth requirement of the specifications, the contractor has not substantially performed its contract since there are a number of locations where the pipes were laid at depths considerably less than the minimum-depth requirement.

The next issue before us is whether the provisions of the contract, making the engineer the sole judge of the work performed under the contract and the sole judge of the manner of performance, would make the engineer's approval of the work and the subsequent final acceptance of the job by the City binding on the City even though all of the terms of the contract were not in fact fully complied with by the contractor.

█ The great weight of authority holds that a provision in a contract such as the one before us, which makes the engineer or other qualified person the sole judge of the quality and acceptability of the work, is valid and binding on the parties and that the action of the engineer under such contract, approving the work and the manner of performance of the contract, and the acceptance of such approval by action of the governing body of the City is final and conclusive on the parties in the absence of a showing of fraud, collusion, concealment which prevented the discovery of the failure on the part of the contractor to comply with contract terms, or such gross mistake as would imply bad faith on the part of the engineer or failure on his part to exercise honest judgment. Guild v. Andrews, 137 F. 369 (8th Cir.Ct.App.); City of Wauwatosa v. Jacobus & Winding Concrete Construction Co. et al., 223 Wis. 401, 271 N.W. 21, 110 A.L.R. 131; City of Lawton v. Sherman Machine & Iron Works, 182 Okl. 254, 77 P.2d 567; Lippert Bros. v. City of Atoka, D.C., 94 F.Supp. 630; Marsh & Co. v. Light & Power Co. of St. Ansgar, 196 Iowa 926, 195 N.W. 754; City of Osceola v. Gjellefald Construction Co., 225 Iowa 215, 279 N.W. 590; City of Heavener v. Terry, 103 Okl. 142, 229 P. 626; Mayor and City Council of Baltimore v. Clark, 128 Md. 291, 97 A. 911; City of Lexington v. Pratt, 31

F.2d 820 (4th Cir.Ct.App.); Callaghan v. City of New York, 233 App.Div. 263, 251 N.Y.S. 501; Hennessy v. Village of Pleasantville, 127 Misc. 364, 215 N.Y.S. 473; Sioux City v. Western Asphalt Paving Corp. et al., 223 Iowa 279, 271 N.W. 624, 109 A.L.R. 608.

The reasoning of these cases is sound. Provisions of a construction contract by which the project engineer is made the judge to decide all questions arising out of the performance of the contract have a definite purpose. Such purpose is to prevent any delay in the performance of a contract which might be caused by disagreement in the carrying out of its terms. The decision of the engineer is made final and conclusive as to any disputes. It is in the best interests of all parties that any disagreement be settled promptly by someone who is qualified to pass on the facts involved in the disagreement.

If the contract had not provided for the complete supervision of the work by the engineer and had not, in clear and unmistakable language, made the engineer's approval of the work final and conclusive, upon acceptance thereof by the governing body of the City, then the rule that acceptance of a job in ignorance of any defects does not prevent recovery, would apply. But, in the case before us, the contract is so drawn that there can be no misunderstanding as to its terms. The engineer was made the sole judge in any dispute as to the work performed, and the contract is so drawn that the engineer is given the absolute right and duty to supervise and direct every step of the performance of that contract. The City does not allege and no proof has been produced that there was any fraud or collusion or that there was any attempt by the contractor to conceal its work or the method of performance. The contract and the specifications are those of the City; they give to the engineer full and complete control of the work and of the manner of its performance; they give to the project engineer the sole right to determine whether the work, as performed by

the defendant, complies with the contract and the specifications. The engineer or, in his absence, the inspector who represented him, and who was selected with the approval of the city council, was on the scene of the work during all of the performance of the contract. Either had the full authority, under the express terms of the contract, to stop the work completely at any period in the performance of the contract.

In the light of these undisputed facts, and in the complete absence of any showing of fraud or, for that matter, any claim of fraud on the part of the contractor, and in the absence of any showing of fraud on the part of the engineer or his inspector, and in the absence of any claim of collusion between the contractor and the engineer or his inspector, the City is and it ought to be precluded from asserting any claim against the contractor, even if the allegations of its complaint, including the allegation that all of the water pipes were not laid at the depth required by the contract, are proved. With the engineer or his inspector constantly on the job, failure to place the pipes at the required depth should have been discovered at the very start of such failure to comply with the specifications. Such failure then could have been remedied immediately at little or no expense.

Here, the record shows, without dispute, that the inspector walked the entire length of the trench after the water pipes had been laid in the trench. He also walked along the entire length of the water system, section by section, after the trenches were dug and before the pipes were lowered into the trenches. Yet no question was raised as to the depth of the trenches until the job was completed and it had been approved and accepted. Now the City is demanding that it be paid for its damage caused by failure of the project engineer and the inspector to perform their duties.

■ The contract gave to the engineer the right to inspect and to pass on the work at every phase in the performance of the contract. Thus the general rule that a writ-

ten acceptance of work in ignorance of defects does not prevent recovery of damages for failure to do the work as agreed, does not apply. Here, the contract specifically provided that the engineer would supervise the work and would see that such work was done according to the contract provisions; his certificate approving the work and the manner of performance and the City's action in accepting such certificate of approval are conclusive on the parties. Sec. 40-22-36, N.D.C.C.

There are very few cases which hold contrary to the rule as we have set it forth, and most of these can be distinguished. In Spokane County v. Pacific Bridge Co. et al., 106 Or. 550, 213 P. 151, the contract had specific provisions to the effect that the failure of the engineer to reject work which was not up to specifications should not release the contractor nor be construed to be an acceptance of the work which was not up to specifications. The court held in that case that, in view of the specific contract provisions, approval and acceptance of the work was not a waiver of latent defects.

It would have been an easy matter for the City of Granville to have inserted a clause in the contract to provide that failure of the engineer to reject work which was not up to specifications and accepting the job would not release the contractor nor be construed as an acceptance of the work which was not up to specifications. The effect of the engineer's certificate in accepting and approving the work depends, therefore, upon the clear provisions of the contract between the parties. The trial court states in his memorandum opinion that, in North Dakota, reference must be had to the contract between the parties to determine the force and effect of the certificate of the plaintiff's engineer in accepting and certifying approval of the construction, citing Hutchinson v. Bohnsack School District, 51 N.D. 165, 199 N.W. 484. In the Bohnsack School District case, however, the contract specifically provided: "No certificate issued nor payment made to the contractor nor par-

tial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract." Had the contract in this case contained a similar provision, our holding would have been the same.

The only ground for avoiding the effect of such a certificate of the engineer, and the subsequent approval of such certificate by the governing body of the City, is fraud or gross mistake. The plaintiff does not allege fraud in its complaint, and no evidence of fraud has been introduced into the record.

■ In general, when fraud is relied upon as a cause of action, such fraud must be specifically alleged. Fraud never will be presumed. The presumption is against the existence of fraud, and fraud must be affirmatively proved by the one who relies upon it. Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, 35 N.W.2d 137; 37 C.J.S. "Fraud" § 78, p. 370, and § 94, p. 393.

■ Fraud or deception never will be inferred from a mere mistake, without other circumstances. Therefore, there can be no fraud without an intent to deceive. It is the action of the mind which gives fraud its existence. Zimmerman v. Kitzan (N. D.), 65 N.W.2d 462.

Thus the approval of the governing body of the City in accepting the project could be avoided only where the certificate of the engineer could be impeached for fraud or such gross mistake as would imply bad faith, or for failure to exercise honest judgment, as where the engineer knowingly and willfully disregards his duty. In such case, either party might allege and prove, in avoidance of the engineer's certificate, that the engineer had knowingly and willfully disregarded his duty. Here, however, we have no allegation that the engineer or his inspector willfully disregarded their duty. The mere fact that the engineer's certificate is in error does not show that it is void as fraudulent. Gilmore v. Courtney, 158 Ill. 432, 41 N.E. 1023.

■ The final issue presented on this appeal is: If the plaintiff City is bound by its acceptance of the cerificate of the engineer approving the work and the manner of performance of the contract, as we hold it is, is the defendant nevertheless liable for any part of the cost of repairing the breaks and lowering the water mains under its guarantee to "keep the system in repair for one year"?

■ The words "keep the system in repair," as used in the contract, require the contractor to keep the system "in repair" and functioning for one year. These are not technical words, but are used in their ordinary sense. Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783, at 797, 166 A.L.R. 1329. "Repair" means "to mend, to restore to a sound and workable condition whatever has been partially destroyed." "Keep in repair" has been held to be synonymous with "maintain." McChesney v. Village of Hyde Park, 151 Ill. 634, 37 N.E. 858, at 862. "To keep in repair" is "to keep from getting out of repair." Baldozier v. Mayberry, 226 Iowa 693, 285 N.W. 140.

Thus it was the obligation of the defendant contractor, under the provisions of the contract, to keep the system in repair and functioning for one year after it was accepted by the City, and to restore it to a workable condition if, during that year, it became partially destroyed. The defendant is liable for whatever moneys were spent by the City to keep the system "in repair" during that year, or to repair any destruction to it during the year.

Since, however, the judgment for the City, which is appealed from in this case, includes not only the cost of keeping the system in repair but also the cost of lowering the pipes and placing them at a greater depth than they were when the work was approved as acceptable by the engineer, the judgment is modified and the case is remanded to the district court with instructions to determine damages due the plaintiff for keeping the system in repair and for repairing any destruction which occurred

during the year immediately following the certificate of approval of the work as acceptable by the project engineer.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.

On Petition for Rehearing.

STRUTZ, Judge.

A petition for rehearing was filed in this case and rehearing was granted.

Upon further consideration of the case on rehearing, the former opinion is adhered to.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.