**COFELL'S PLUMBING & HEATING, INC., Plaintiff and Appellant,**

v.

**Leo STUMPF, Joseph Wetsch, Christ Nuss and Ben Meier, Individually and as Partners, d.b.a. Mandan Acres, Defendants and Appellees.**

**Civ. No. 9695.**

Supreme Court of North Dakota.

March 13, 1980.

F. J. Smith, Bismarck, for plaintiff and appellant.

Kelsch & Kelsch, Mandan, for defendants and appellees; argued by William C. Kelsch, Mandan.

SAND, Justice.

Cofell's Plumbing & Heating, Inc. [Cofell's], appealed from a judgment of the Morton County District Court which awarded Cofell's $3,029 for work performed pursuant to a construction contract. We affirm.

Mandan Acres is a partnership comprised of Leo Stumpf, Joseph Wetsch, Christ Nuss and Ben Meier and is engaged in the development of residential lots in Mandan, North Dakota. In early 1978, Mandan Acres hired the engineering firm of Swenson, Hagen & Company of Bismarck, North Dakota, to prepare specifications and contract documents for a bid on installing sewer and water services to a new residential area then being developed by Mandan Acres. In May 1978, bids were called for and Cofell's was awarded the contract.

The area of dispute in this case involved only the sewer line installation and related to the amount of compensation that Cofell's was entitled to for rock excavation. The contract between the parties set unit prices on estimated quantities of work to be done and specifically fixed the compensation for rock excavation at $40.00 per cubic yard. The engineer's proposal estimated rock excavation in connection with the sewer line at 100 cubic yards, but the actual compensation for rock excavation was to be determined after completion of the work by multiplying the actual number of cubic yards of rock removed by the contract rate of $40 per cubic yard.

In the course of digging the sewer trench, Cofell's encountered a stretch of ledge rock which measured 132 feet long by 2½ feet deep by 28 feet wide. Defendant Joe Wetsch discussed with Cofell's on-site superintendent the advisability of having a caterpillar with a ripper come in and break up the rock. The superintendent told Wetsch that he didn't want to be held up by waiting for the ripper and that there was no problem in proceeding with the caterpillar backhoe machine Cofell's was using for the sewer line excavation. This backhoe machine had a 40-foot boom and a bucket 42 inches in width which could hold 1.5 cubic yards of material. Cofell's was using a machine of that size on the project because it knew that 16-foot deep trenches were required for the sewer line.

After the 342.2 cubic yards of ledge rock was removed by Cofell's with the backhoe machine, Cofell's superintendent was not certain whether or not it would be compensated for as a rock excavation under the contract. The project engineer, however, later concluded that Cofell's should be paid for excavating the 342.2 cubic yards of rock.

Upon completion of the project, Cofell's submitted a final payment request for $66,717.00, which included 450 cubic yards of rock excavation from the sewer line at $40 a cubic yard, or $18,000.00. Removal of the disputed ledge rock of 342.2 cubic yards represented $13,688.00 of the rock excavation total.

Mandan Acres paid Cofell's $50,000.00, leaving an unpaid balance claimed by Cofell's of $16,717.00. Mandan Acres tendered Cofell's this balance less $13,688.00 on the disputed ledge rock, or the sum of $3,029.00. Cofell's refused the tender and instead filed a mechanic's lien on the property where the work was performed. Mandan Acres demanded Cofell's to foreclose its lien and this action ensued.

The case was tried before the Morton County district court sitting without a jury, and was resolved by an application of two

provisions of the specifications in the contract between Mandan Acres and Cofell's. Section 801–3.3 of the contract specifications governed the question of when rock excavation was to be measured for payment and provided in relevant portion as follows:

"801–3.3 *Rock Excavation. All rock found in the trench area which cannot be removed by a trenching machine or by workmen with a pick, spade or shovel shall be classified as solid rock and measured for payment if of two (2) cubic feet in contents or more per each individual rock, boulder or continuous slab of ledge rock.* Solid rock shall be measured for payment on the basis of and limited to the maximum trench width allowed under sub-section 801–3.2, 'Excavation and Preparation of Trench'. If solid rock extends below the necessary depth of excavation it shall be measured for payment to a horizontal plane six (6) inches below the bottom of the pipe. All rocks smaller in volume than two (2) cubic feet or rock that can be removed by a trenching machine and/or by workmen with pick, spade or shovel without the aid of blasting, wedging, sledging or barring shall not be classified as solid rock, but shall be termed excavation and the cost for the removal thereof included in the unit price bid for the item for which the excavation is made." [Emphasis ours.]

Under the contract, then, if the ledge rock in question could not be removed by a trenching machine or by workmen with a pick, spade, or shovel, its excavation was to be compensated for at the contract price of $40.00 per cubic yard.

Also, Section 105 of the contract specifications gave the engineer of the project binding authority to determine all questions concerning specification interpretations and the execution of the work. That section provided as follows:

"105. *ENGINEER.* Where the word 'Engineer' is used in the specifications or in the contract, it shall be and is mutually understood to refer to the City Engineer or his authorized representatives. The Engineer will give the grades and locations for all work and no work depending upon such grades or locations shall be commenced until after the same have been established. *Upon all questions concerning the interpretations of these specifications or the plans or the execution of the work, the decision of the Engineer shall be binding upon both parties.* Detail plans of all work not completely shown on the plans now on file will be furnished by the Engineer from time to time and the work shall be executed in accordance with such detail plans." [Emphasis ours.]

The district court found that the caterpillar backhoe which Cofell's used to remove the ledge rock in issue was a trenching machine within Section 801–3.3 of the contract specifications. Further, the district court found that all parties agreed that the rock in question could have been removed by working with a pick, spade, or shovel. Therefore, the district court concluded that Cofell's was not entitled to compensation at $40.00 per cubic yard for the 342.2 cubic yards in issue.

The district court also concluded that, regardless of the project engineer's position that Cofell's should be paid for removal of the ledge rock, Section 105 of the contract specifications had no application to this matter. The district court stated that that section gave the engineer final and binding authority on matters dealing with questions of performance or of quality or quantity of the work, but did not include binding construction of clauses dealing with questions concerning payment for work performed.

Judgment was entered against Mandan Acres for the $3,029 balance it had previously tendered to Cofell's, and Cofell's appealed the judgment to this court.

Cofell's two principal contentions on appeal were that the district court erred in finding that the backhoe used to remove the ledge rock was a trenching machine, and that the district court erred in finding that the ledge rock could also have been removed by workmen with picks, spades, or shovels.

■ These district court findings of fact will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure. A trial court's findings of fact are "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Keidel v. Rask*, 290 N.W.2d 255 (N.D.1980); *Peterson v. Hart*, 278 N.W.2d 133 (N.D.1979).

■ Cofell's argued that the backhoe used to remove the ledge rock in question was not a trenching machine for purposes of Section 801–3.3 of the contract specifications because a trenching machine is a specific type of trench-digging machine which digs a straight wall trench by the action of a rotating wheel rather than by the boom-and-bucket method of the caterpillar backhoe. This position was also taken by the project engineer. The contract specifications, however, do not define the term "trenching machine," nor did they explain by what type of action a trenching machine removed material from the trench.

Further, Cofell's knew from the start of the project that it would need a digging machine of substantial capacity because it would be digging trenches up to 16 feet deep, 42 inches wide at the bottom. The project engineer acknowledged that there was no rotary-wheel trenching machine made which could dig a 42-inch wide trench up to 16 feet deep. Trenchers of that type which were available on the market were capable of digging trenches of only 6 to 8 inches wide. Mandan Acres also offered to have a tractor equipped with a ripper brought in to remove the ledge rock, but Cofell's did not want to wait because the task would be no problem for its backhoe. Upon this evidence, the district court found that Cofell's backhoe machine was a trenching machine for purposes of Section 801–3.3 of the contract specifications. We think that this finding was supported by the evidence.

■ Cofell's next maintained that the finding of the district court that the rock could also have been removed by workmen with picks, spades, or shovels was clearly erroneous because it was only a theoretical possibility. The contract in this case provided extra compensation for excavation of ledge rock that could not be removed by workmen with a pick, spade, or shovel. We agree that a reasonable construction of this contractual language does not contemplate years of workmen labor, but we also believe that such an irrational result was not borne out by the evidence in this case. The record disclosed that the ledge rock in question was a "shale-type rock which broke up into many pieces during removal. Despite the fact that manual labor may not have been as economically feasible in this case as using the caterpillar backhoe, the testimony in evidence indicated that workmen with hand tools could have removed this particular stretch of ledge rock. The district court's finding in that regard was therefore not clearly erroneous.

Cofell's also asserted that even if the district court's findings of fact were correct, Section 105 of the contract specifications, which vested the project engineer with binding authority to interpret the specifications, precluded any dispute on the matter of extra payment for the ledge rock excavation because the project engineer concluded that Cofell's should be paid for removing the 342.2 cubic yards of rock.

In *City of Granville v. Kovash, Inc.*, 118 N.W.2d 354 (N.D.1962), an action against a contractor for failure to install water and sewer systems in accordance with the parties' contractual specification, this court determined, among other things, the validity of a contract provision which gave the project engineer final and conclusive authority to decide any and all questions which arose in the performance of the contract as to quality or acceptability of materials furnished, work performed, or manner of performance. The court held that the provision was valid and binding on the parties and that the action of the engineer was final and conclusive on the parties in the absence of a showing of fraud, collusion, concealment or such gross mistake as would

imply bad faith on the part of the engineer. The court explained its ruling as follows:

". . . Provisions of a construction contract by which the project engineer is made the judge to decide all questions arising out of the performance of the contract have a definite purpose. Such purpose is to prevent any delay in the performance of a contract which might be caused by disagreement in the carrying out of its terms. The decision of the engineer is made final and conclusive as to any disputes. It is in the best interests of all parties that any disagreement be settled promptly by someone who is qualified to pass on the facts involved in the disagreement." 118 N.W.2d at 359.

Cofell's urged that the *City of Granville* decision was direct authority that it was entitled under Section 105 of the contract specifications to be paid for excavation of the ledge rock here in question because the project engineer conclusively so determined. We disagree.

The decision of this Court in *City of Granville*, as noted by the district court in the instant case, was directed at questions arising out of the performance of the contract. This included, but was not limited to, such matters as the quality and acceptability of the work on the project and the manner in which that work was to be completed. However, in this case there was no dispute over performance of the contract. What was involved here was a question of whether or not Cofell's should be paid for the rock removal as an extra. Any decision on this matter did not have to be made instantly and as the work progressed, but could have been, and actually was, decided after the project was completed.

■ We agree with the position advanced by Mandan Acres in this case that a definite line must be drawn between disputes or specification interpretations which deal with work performance and require immediate resolution and those which deal with other contractual disputes, such as rates, method, or time of payment, and do not require prompt on-the-site determination. Because we are of the opinion that the

matter here in issue was of the latter type of dispute, we think the district court was correct in concluding that Section 105 of the contract specifications had no application to questions concerning payment under the contract.

The judgment of the district court is affirmed in all respects.

ERICKSTAD, C. J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

If I could agree that this is an appeal involving the review of fact issues pursuant to Rule 52(a), NDRCiv.P, I would concur with the majority one hundred percent. The effect of the trial court's decision in this case was to rewrite Section 105 of the specifications without applying any of the provisions of Title 9 of the North Dakota Century Code which permit such a thing. That takes it out from under Rule 52(a).

When this court said in *City of Granville v. Kovash, Inc.*, 118 N.W.2d 354, 359 (N.D. 1962), that the purpose of a provision in a contract making a project engineer the final judge "is to prevent any delay," it was obviously partly right. It was even more correct when it added that it is best that disagreements be settled "by someone who is qualified." But both statements have to be considered judicial editorializing.

It was Mandan Acres that decided that an engineer, not the district judge, was qualified to settle disagreements on this project. If Cofell's had known that it had to have a work stoppage before the engineer's decision was binding, I'm sure it could have been arranged. This case will form a precedent that will invite delays by contractors. I would reverse the judgment.